2014 CO 17

**Milton Michael TRUJILLO, Insurance Producer with Bail Bond Authority, License No. 60267, Petitioner,**

v.

**COLORADO DIVISION OF INSURANCE, Respondent.**

**Supreme Court Case No. 12SC672**

Supreme Court of Colorado.

March 17, 2014

Attorneys for Petitioner: Lee N. Sternal PC, Lee N. Sternal, Pueblo, Colorado.

Attorneys for Respondent: John W. Suthers, Attorney General, Todd S. Larson, First Assistant Attorney General, Denver, Colorado.

JUSTICE HOBBS delivered the Opinion of the Court.

¶1 We granted certiorari to review the court of appeals' judgment in *Colorado Division of Insurance v. Trujillo*, 2012 COA 54, —— P.3d ——, 2012 WL 1036066.[1] The court of appeals upheld an order of the Interim Insurance Commissioner ("Commissioner") revoking Milton Trujillo's ("Trujillo") insurance producer license with bail bond authority and denying Trujillo's application to renew the license.

¶2 In 2008, the Division of Insurance ("Division") initiated an investigation into Trujillo based on a complaint it received in 2005 from Connie Espinoza ("Espinoza"). According to Espinoza, Trujillo accepted $3,500 from her to bail her son, Ted Espinoza, out of jail and wrongfully failed to return the money to her. Trujillo later admitted that he put some of the money toward another defendant's bond and gave the remainder to Ted Espinoza's acquaintance, Connie Cordova ("Cordova"), after it became apparent that the $3,500 was insufficient for Ted Espinoza's bond. Trujillo asserted that he handled the money at Cordova's direction because the money belonged to her and not Espinoza.

¶3 The Division charged Trujillo with twelve counts of violating the insurance code, the professions and occupations code, and Division regulations. Following a hearing, an Administrative Law Judge ("ALJ") found that the Division had established sufficient basis for sanctioning Trujillo on nine counts, including the allegation that Trujillo breached a fiduciary duty under section 10–2–704(1)(a). The ALJ's initial decision revoked Trujillo's license and denied his renewal application. The Commissioner adopted the ALJ's decision.

¶4 The court of appeals affirmed the Commissioner's action, determining that Trujillo had violated a fiduciary duty prescribed by

---

1. The certiorari issues in this case state as follows:

    1. Whether the court of appeals erroneously interpreted section 10–2–704(1)(a), C.R.S. (2011), to hold that a bail bond agent must return all unspent bond premiums to the person who physically transmitted them to the bail bond agent.

    2. Whether the court of appeals erred in upholding the Division of Insurance's determination that petitioner, a bail bond agent, committed fraud, misappropriation, and breach of a fiduciary duty when he returned unspent bond premiums to the person believed to be the legal owner of the funds instead of to the person who originally transmitted the funds.

section 10–2–704(1)(a). We reverse the court of appeals' judgment upholding the Commissioners' action because the ALJ, the Commissioner, and the court of appeals erred in applying section 10–2–704(1)(a) to this case. While there are unappealed findings of fact upon which the Commissioner on remand could uphold the sanction it ordered, it is not clear to us whether, absent the agency's construction of section 10–2–704(1)(a), the Commissioner would have exercised his authority to revoke Trujillo's license and deny his renewal application.[2] Thus, we remand this case to the court of appeals and order it returned to the Commissioner for redetermination of the sanction for Trujillo's conduct.

## I.

¶ 5 Since 1994, Trujillo had been licensed as an insurance producer and bail bonding agent. Trujillo's license expired on January 1, 2009. In March 2009, the Division sent Trujillo notice of charges relating to Trujillo's transaction with Espinoza, described below. The Division charged Trujillo with twelve counts of violating the insurance code, the professions and occupations code, and Division regulations. The Division sought revocation of Trujillo's license, a refund of $3,500 to Espinoza, and civil penalties. The Division denied Trujillo's application to renew his license in April 2009 and subsequently amended the charging document to request that the ALJ affirm the Division's denial of the license application. In fall 2010, an ALJ held a two-day hearing in this case.

¶ 6 The ALJ found the following facts, among others. In December 2004, Espinoza gave Trujillo $3,500 in cash to bond her son,

Ted Espinoza, out of jail. As a receipt, Trujillo gave Espinoza one of his business cards with the following handwritten on the back: "I received $3500 from Connie Espinoza on 12/21/04 for Ted Espinoza's bond. M. Trujillo." However, the $3,500 was insufficient to cover Ted Espinoza's bond and no bond or indemnification agreement was ever executed. Trujillo did not return the $3,500 to Espinoza. Instead, he used a portion of the money to offset an amount owed to him by Cordova for a different defendant's bond and gave the remainder to Cordova.

¶ 7 In his defense, Trujillo argued that he properly handled the $3,500 at Cordova's direction because Ted Espinoza's attorney said the money belonged to her. The ALJ did not make any factual findings about who owned the money. Regardless, the ALJ found:

> A bail bonding agent must be scrupulous in handling the money entrusted to him. Here the Respondent cavalierly decided that he could judge who the money belonged to, and use it accordingly. In the process he managed to reduce exposure on [another] bond. This was not merely poor judgment, but a violation of the legal requirements to be a bail bonding agent.

¶ 8 The ALJ found that the Division had established a basis for sanctioning Trujillo on nine counts. First, the ALJ found and concluded that the Division had established a basis for sanctioning Trujillo for the following violations, assuming that Trujillo breached a statutorily prescribed fiduciary duty:

- Violating a fiduciary duty to Espinoza under section 10–2–704(1)(a) and Division of Insurance Regulation 1–2–1, 3 Code of Colorado Regulations 702–1 (2011);[3]

**2.** At the time of the disputed transaction, bail bonding agents were licensed and regulated under both the insurance code and the professions and occupations code. §§ 10–2–101, et seq., C.R.S. (2013); §§ 12–7–101, et seq., C.R.S. (2011). The legislature has repealed the article in the professions and occupations code that was specifically devoted to bail bonding agents and consolidated the laws governing bail bonding agents in the insurance code. §§ 12–7–101 et seq., repealed by Laws 2012, Ch. 280, § 40, eff. July 1, 2012. Our decision addresses the statutes and regulations that were in effect at the time of

the Espinoza–Trujillo transaction and the ALJ's initial decision, as adopted by the Commissioner.

**3.** Section 10–2–704(1)(a) provides: "All premiums belonging to insurers and *all unearned premiums belonging to insureds* received by an insurance producer licensee under this article *shall be treated by such insurance producer in a fiduciary capacity.* The commissioner may promulgate such rules as are necessary and proper relating to the treatment of such premiums." (Emphasis added).

The ALJ cited the following language from Division Regulation 1–2–1, section 4.B.: "Upon re-

- Misappropriating Espinoza's money, which the Commissioner may sanction under section 10–2–801(1)(e), C.R.S. (2011);[4]

- Committing fraud, which the Commissioner may sanction under section 10–2–801(1)(h);[5] and

- Behaving in a manner that is punishable under section 10–2–801(1)(i).[6]

The ALJ also found and concluded that Trujillo violated five documentation and reporting requirements of the then-existing stat-utes and regulations. Trujillo did not appeal these grounds for sanction:

- Failing to provide Espinoza a prenumbered receipt meeting the requirements of section 12–7–108(1)[7] and Division of Insurance Regulation 1–2–14, 3 Code of Colorado Regulations 702–1 (2011)[8];

- Failing to report the receipt of money from Espinoza in his annual report to the Division, in violation of sections 12–7–106(1)(b) and –105(1) and Division of Insurance Regulation 1–2–14, 3 Code of Colorado Regulations 702–1 (2011);[9]

---

4. Section 10–2–801(1)(e) authorizes the Commissioner to sanction bail bonding agents for "Improperly withholding, misappropriating, or converting to the licensee's or applicant's own use any moneys or property belonging to policyholders, insurers, beneficiaries, or others received in the course of the business of insurance."

5. Section 10–2–801(1)(h) authorizes the Commissioner to sanction bail bonding agents for "Commission of any unfair trade practice or fraud."

6. Section 10–2–801(1)(i) authorizes the Commissioner to sanction bail bonding agents for "The use of fraudulent, coercive, or dishonest practices or demonstrating incompetence, untrustworthiness, or financial irresponsibility in this state or elsewhere."

7. Section 12–7–108(1) provided in pertinent part: "All indemnity agreements, promissory notes, premium and collateral receipts, and bond revocation agreements shall be in writing and signed by the bail bonding agent and the defendant or third-party indemnitor." Ch. 368, sec. 8, § 12–7–108(1), 2004 Colo. Sess. Laws 1752.

8. The ALJ cited Division of Insurance Regulation 1–2–14, 3 Colo.Code Regs. 702–1 (2011), which contained the same substantive rules as the version of Division Regulation 1–2–14 that was in effect at the time of the Trujillo–Espinoza transaction. Section 5.B. of the regulation provided:

B.   Pre-numbered Receipts
1.   *Each bail bonding agent shall use prenumbered embossed receipts,* including any power of attorney receipt or premium payment receipt, whenever money or any other consideration *for a* bond or *undertaking is received by the bail bonding agent.*
2.   Each prenumbered embossed receipt shall contain the following minimum information:
a.   *The date the money* or other consideration *is received by the bail bonding agent* (including any premium paid or collateral received);
b.   The name of the defendant;

c.   *A description of the* consideration or *amount of money received;*
d.   *The purpose for which the* consideration or *money* was received;
e.   The number of the bail insurance company power-of-attorney form attached to the bond (if applicable/available);
f.   The penal sum of the bond;
g.   The name of the indemnitor; and
h.   *The terms under which the money* or other consideration *shall be released.*
3.   *The number of each prenumbered receipt shall be entered in the Daily Bond Register in sequential order.*
4.   The original prenumbered receipt shall be signed and dated by the bail bonding agent and given to the defendant or third party indemnitor.
5.   A duplicate copy of the prenumbered receipt shall be retained in the bail bonding agent's permanent office records.
6.   *Bail bonding agents shall account for all prenumbered receipts in the Daily Bond Register, whether they were issued, destroyed or otherwise not used by the bail bonding agent.*
7.   If multiple bail bonds are written by the same bail bonding agent for the same defendant, the bail bonding agent must issue a prenumbered receipt that conforms with this Section 5.B. for each bail bond written. Prenumbered receipts, whether for premium or collateral, that are issued that do not reflect each bail bond as a separate transaction shall not be in conformance with this Section 5.B. (Emphasis added).
Under then-effective Division of Insurance Regulation 1–2–14, section 5.A., bail bonding agents were required to submit each year's daily bond register to the Division along with their annual reports.

9. Section 12–7–106(1)(b) prohibited "Knowingly failing to comply with or knowingly violating any provisions of this article or of any proper order or rule of the division ... where the licensee knew or reasonably should have known of the provisions, order, or rule." Ch. 368, sec. 7, § 12–7–106(1)(b), 2004 Colo. Sess. Laws 1752. Section 12–7–105(1) provided: "Each licensed bail bonding agent shall provide a report to the

- Failing to return money within forty-eight hours of receipt, as section 12–7–109(1)(*o*) required a bail bonding agent to do whenever the agent fails to post a bond within twenty-four hours of entering a signed contract to do so; [10]
- Failing to provide Espinoza a prenumbered receipt meeting the requirements of section 12–7–108(4); [11] and
- Failing to provide Espinoza a disclosure form, as required by section 12–7–108(9) and Division of Insurance Regulation 1–2–14, 3 Code of Colorado Regulations 702–1 (2011).[12]

¶ 9 The court of appeals upheld the Commissioner's final order. In doing so, it ruled that the Division permissibly interpreted section 10–2–704(1)(a) to establish a fiduciary relationship between Espinoza and Trujillo.

## II.

¶ 10 We reverse the court of appeals' judgment upholding the Commissioners' action because the ALJ, the Commissioner, and the court of appeals erred in applying section 10–2–704(1)(a) to this case. While there are unappealed findings of fact upon which the Commissioner on remand could uphold the sanction it ordered, it is not clear to us whether, absent the agency's construction of section 10–2–704(1)(a), the Commissioner would have exercised his authority to revoke Trujillo's license and deny his renewal application. Thus, we remand this case to the court of appeals and order it returned to the Commissioner for redetermination of the sanction for Trujillo's conduct.

### A. Standard of Review

¶ 11 The Administrative Procedure Act ("APA") provides that agency decisions to deny or revoke licenses shall be based upon the criteria, terms, and purposes of the statute, regulations, and case law interpreting the statute. § 24–4–104(2), C.R.S. (2013). Where an ALJ issues an initial decision, the APA provides the right to appeal the ALJ's decision to the agency by filing timely exceptions upon the parties. § 24–4–105(14), C.R.S. (2013). In an action for judicial review of the agency decision, an aggrieved person may challenge the agency action for being contrary to law or unsupported by the evidence, among other grounds set forth in section 24–4–106(7), C.R.S. (2013).

¶ 12 We review questions of statutory construction de novo. *Colo. Dep't of Rev. v. Hibbs*, 122 P.3d 999, 1002 (Colo.2005). Our objective is to effectuate the intent and

---

division no later than November 1 of each year. Such report shall be in the form and manner that the division requires...." Ch. 368, sec. 6, § 12–7–105(1), 2004 Colo. Sess. Laws 1752.
Then-effective Division Regulation 1–2–14, § 5.A.1., provided:
A. Daily Bond Register
1. *Each bail bonding agent shall maintain a current and up-to-date Daily Bond Register that identifies every* executed bond or *undertaking* by the bail bonding agent as part of their permanent office records. The Daily Bond Register shall be maintained on the form prescribed in Appendix A of this regulation. (Emphasis added).

10. Section 12–7–109(1)(*o*) prohibited the following: "if the bond is not posted within twenty-four hours of receipt of full payment or a signed contract for payment, failure to refund all moneys received, release all liens, and return all collateral within forty-eight hours of receipt of such payment or contract." Ch. 96, sec. 11, § 12–7–109(1)(*o*), 1995 Colo. Sess. Laws 288.

11. Section 12–7–108(4) provided: "Each bail bonding agent who accepts money or any other consideration for a bond or undertaking shall, for each payment received, give to each indemnitor a prenumbered, signed receipt as evidence of payment. The prenumbered, signed receipt shall state the date, the name of the defendant, a description of the consideration or amount of money received and the purpose for which it was received, the number of any applicable power-of-attorney form attached to the bond, the penal sum of the bond, the name of the indemnitor, and the terms under which the money or other consideration shall be released...." Ch. 368, sec. 8, § 12–7–108(4), 2004 Colo. Sess. Laws 1753.

12. Section 12–7–108(9) provided: "Every bail bonding agent shall provide, in a form prescribed by the commissioner, a disclosure statement to each defendant or third-party indemnitor." Ch. 368, sec. 8, § 12–7–108(9), 2004 Colo. Sess. Laws 1754.

Division Regulation 1–2–14 § 5.D.3. provided: "The original Disclosure Statement shall be provided to the defendant or third party indemnitor for each bond posted, with a duplicate copy maintained in the bail bonding agent's permanent office records."

purpose of the General Assembly. *Lobato v. Indus. Claim Appeals Office*, 105 P.3d 220, 223 (Colo.2005). If the statutory language is clear, we apply the plain and ordinary meaning of the provision. *Id.* When interpreting a comprehensive legislative scheme, we construe each provision to further the overarching legislative intent. *A.S. v. People*, 312 P.3d 168, 171 (Colo.2013); *see also* § 2–4–203(1)(a), -(g), C.R.S. (2013) (encouraging consideration of the object the legislature sought to attain). We do not add words to a statute. *Boulder Cnty. Bd. of Comm'rs v. HealthSouth Corp.*, 246 P.3d 948, 951 (Colo. 2011). If the statute is reasonably susceptible to different interpretations, we determine the proper interpretation by examining the legislative goals underlying the provision, the circumstances under which it was adopted, and the consequences of possible alternative constructions. § 2–4–203(1); *Lobato*, 105 P.3d at 223–24.

### B. Applicable Law

■ ¶ 13 The General Assembly may prohibit the practice of a profession without a statutorily prescribed license. *See Kourlis v. District Court*, 930 P.2d 1329, 1333 (Colo. 1997). The Division of Insurance licensed Trujillo as an insurance producer with bail bond authority ("bail bonding agent"). An insurance producer is "a person who solicits, negotiates, effects, procures, delivers, renews, continues, or binds" insurance policies for risks in Colorado and membership in certain health care plans. § 10–2–103(6), C.R.S. (2013). Insurance producer licenses authorize a person to act as an insurance producer for one or more specific lines of authority. § 10–2–103(7), C.R.S. (2013). Under then-existing law, one line of authority was "bail bonding agent." Ch. 250, sec. 6, § 10–2–407(1), 1999 Colo. Sess. Laws 988 (also providing for lines of authority for life insurance, property insurance, title insurance, etc.).[13]

¶ 14 At the time of Trujillo's transaction with Espinoza, the General Assembly authorized the Division to regulate bail bonding agents under both the insurance code and the professions and occupations code. §§ 10–2–101, et seq., C.R.S. (2013); ch. 266, sec. 1, §§ 12–7–101, et seq., 1993 Colo. Sess. Laws 1521. The insurance code provisions established the general requirements for all insurance producers, whereas the professions and occupations code provided comprehensive standards for bail bonding agents. Bail bonding agents were required to comply with both statutes and their implementing regulations. The Commissioner could deny, suspend, revoke, or refuse to renew the license based on any violation of the insurance law, article 7 of the professions and occupations code, or a lawful rule or order of the Commissioner. § 10–2–801(1)(c); ch. 368, sec. 7, § 12–7–106(1)(b), 2004 Colo. Sess. Laws 1752. Moreover, the professions and occupations code authorized the Commissioner to sanction bail bonding agents for certain acts that are relevant to that profession. Ch. 231, sec. 9, § 12–7–106(1), 1996 Colo. Sess. Laws 1183–85 (authorizing sanction for failing to satisfy a bail forfeiture judgment, soliciting business where prisoners are in custody, and other acts).

¶ 15 The Division is responsible for licensing all insurance producers, overseeing their continuing education, and disciplining licensees. §§ 10–2–401, et seq., –301, –801. All licensure applicants must demonstrate good moral character, pass an examination, satisfy minimum education requirements, and meet other statutory requirements. § 10–2–404(1). Under then-effective law, applicants seeking qualification as a bail bonding agent were also required to satisfy additional requirements under the professions and occupations code. The professions and occupations code specified the prelicensure education requirements for bail bonding agents, which includ-

---

**13.** The Division of Insurance regulates three types of licensees who furnish bail in Colorado courts in exchange for compensation: surety agents, cash bonding agents, and professional cash bail agents. We do not discuss cash bonding agents or professional cash bail agents because they are outside the scope of this opinion. Trujillo acted as a surety agent; that is, he acted as an agent of an insurance company, appointed with power of attorney to execute or countersign bail bonds. Ch. 250, sec. 6, § 10–2–407(1), 1999 Colo. Sess. Laws 988; *see also* § 16–4–114, C.R.S. (2013) (imposing liability on agents and bail insurance companies if a defendant fails to appear in court).

ed two hours concerning bail bond industry ethics. Ch. 96, sec. 4, § 12–7–102.5, 1995 Colo. Sess. Laws 282. The professions and occupations code also required applicants seeking qualification as bail bonding agents to submit additional materials with their insurance producer license application, including fingerprints and the cost of a criminal background check. Ch. 231, sec. 4, § 12–7–103, 1996 Colo. Sess. Laws 1179. The Commissioner had authority to promulgate rules to implement both of these statutes. § 10–2–104; ch. 231, sec. 2, § 12–7–102(3), 1996 Colo. Sess. Laws 1178.

¶ 16 The licensing provisions of the then-effective insurance code contained only two sections specifically devoted to the regulation of bail bonding agents. First, section 10–2–415.5 prohibited insurance producers with bail bonding agent authority from claiming to represent a particular insurer unless they enter a written contract with the insurer. § 10–2–415.5 (also requiring insurers to notify the Commissioner of bail bonding agent appointments, requiring insurance producer bail bonding agents to renew their licenses annually, and authorizing the Commissioner to set renewal fees). Second, section 10–2–415.7 required insurers to notify the Commissioner upon the termination of the appointment of an insurance producer bail bonding agent. § 10–2–415.7 (requiring the insurer to disclose if the termination was due to a rule violation).

¶ 17 Article 7 of the then-effective professions and occupations code comprehensively prescribed the conduct of bail bonding agents. The statute set out reporting and recordkeeping requirements for bail bonding agents. Ch. 266, sec. 1, § 12–7–105, 1993 Colo. Sess. Laws 1525; ch. 368, sec. 8, § 12–7–108(3), 2004 Colo. Sess. Laws 1753. The General Assembly also required bail bonding agents to provide detailed, prenumbered receipts upon accepting any consideration. Ch. 368, sec. 8, § 12–7–108(4), 2004 Colo. Sess. Laws 1753. The statute also included a litany of sanctionable acts, including failure to pay a forfeiture judgment, conviction for a felony, and wrongfully failing to return collateral. Ch. 231, sec. 9, § 12–7–106(1), 1996 Colo. Sess. Laws 1183–85.

¶ 18 The Division adopted regulation 1–2–14, implementing section 12–7–108(3)'s requirement to maintain a current and up-to-date register, in a form with such content as prescribed by the Commissioner, identifying all "bonds or undertakings" of the licensee. These registers were required to be included in the agent's annual reports to the Division. Div. of Insurance Reg. 1–2–14, § 5.A., 3 Code Colo. Regs. 702–1 (2011).

¶ 19 The then-effective insurance code provided (and still provides) that "*all unearned premiums belonging to insureds* received by an insurance producer licensee under this article shall be treated by such insurance producer in a fiduciary capacity." § 10–2–704(1)(a) (emphasis added). To implement this requirement, the Division promulgated Division Regulation 1–2–1, which provided that "[u]pon receipt, the insurance producer must treat all premiums and returned premiums in a fiduciary capacity." Div. of Insurance Reg. 1–2–1, 3 Code Colo. Regs. 702–1, § 3.B. (2004). The regulation stated that "[t]he purpose of this regulation is to clarify the responsibility of insurance agents and brokers to treat *each insurance policy and premiums handled thereon as a separate account of their insureds* unless specific authorization has been obtained from insureds to commingle multiple obligations and funds." *Id.* § 2 (emphasis added).

## C. Section 10–2–704(1)(a)'s Fiduciary Duty Standard Does Not Apply to this Case

¶ 20 We conclude that Trujillo did not violate a fiduciary duty to Espinoza because she was not an "insured" under section 10–2–704(1)(a). This section requires insurance producers to handle all unearned premiums belonging to insureds in a fiduciary capacity:

> All premiums belonging to insurers and *all unearned premiums belonging to insureds* received by an insurance producer licensee under this article shall be treated by such insurance producer in a fiduciary capacity. The commissioner may promulgate such rules as are necessary and proper relating to the treatment of such premiums.

§ 10–2–704(1)(a) (emphasis added). Under the plain language of the statute, insurance

producers owe fiduciary duties to insureds. § 10–2–704(1)(a).[14]

¶ 21 The term "insured" is not defined by statute, in either the insurance code or the then-effective professions and occupations code. Under common law, an "insured" is "[a] person who is covered or protected by an insurance policy." *Black's Law Dictionary* (9th ed. 2009). Identifying the insured would be a straightforward exercise in an enforcement action against an insurance producer who deals in traditional insurance policies. *See* § 10–2–407(1) (listing lines of authority for which an insurance producer may qualify). However, as a bail bonding agent, Trujillo instead acted as a surety.

¶ 22 The term "insured" did not appear in article 7 of the then-effective professions and occupations code, which regulated bail bonding agents. Instead, the professions and occupations code uses terminology from the common law of suretyship to describe the parties involved in a bail bonding contract. Under common law, suretyship involves three indispensable parties: the principal, the surety, and the creditor (sometimes known as an "obligee"). Restatement (First) of Security § 82 (1941) (comments b-d) (defining the three parties in suretyship). The then-effective professions and occupations code referred to the defendant released under the bail bond as the "principal." *See, e.g.,* ch. 266, sec. 1, § 12–7–109(1)(a), 1993 Colo. Sess. Laws 1528 (prohibiting a bail bonding agent from suggesting "any particular attorney to represent such licensee's principal"). The code referred to bail bonding agents and the insurance companies that guarantee bail bonds as "sureties." Ch. 47, sec. 1, § 12–7–101(2.5), 1999 Colo. Sess. Laws 131 (defining "compensated surety" to mean "any person in the business of writing bail appearance bonds who is subject to regulation by the Colorado division of insurance, including bonding agents and bail insurance companies"). In the bail bonding context, the court functions as a creditor or obligee: the principal owes the court the duty to appear and the surety is liable to the court if the principal fails to appear. Ch. 231, sec. 4,

§ 12–7–103(3), 1996 Colo. Sess. Laws 1180; *see also* Restatement (First) of Security § 82 (comment d) (defining the creditor as the entity "to whom the surety is bound and to whom the principal is under an obligation"). Accordingly, we have recognized that the court is the creditor in the bail bonding context. *People v. Tyler,* 797 P.2d 22, 25 (Colo.1990).

¶ 23 It is unclear from the plain statutory language to whom a bail bonding agent might owe a fiduciary duty under section 10–2–704(1)(a) because the statute does not define the term "insured" and the then-effective statutes specifically governing bail bonding agents did not use the term "insured." Moreover, the concept of an "insured" does not exist in the common law of suretyship, which evolved as a separate body of law. Although the insurance statutes define "insurer" to include a person engaged as a surety, *see* § 10–2–103(6.5), here we must determine which party in the surety contract is analogous to an "insured" for purposes of section 10–2–704(1)(a). We have previously explained that in a surety contract the creditor is the party that is akin to an insured:

> A special relationship exists between a commercial surety and [a creditor] that is nearly identical to that involving an insurer and an insured. When [a creditor] requests that a principal obtain a commercial surety bond to guarantee the principal's performance, the [creditor] is essentially insuring itself from the potentially catastrophic losses that would result in the event the principal defaults on its original obligation. When the principal actually defaults, the commercial surety must assume or correct any flaws in performance pursuant to the terms of the original contract, thereby eliminating the [creditor's] risk of loss in the venture.

*Transamerica Premier Ins. Co. v. Brighton School Dist. 27J,* 940 P.2d 348, 352 (Colo. 1997) (citations and footnote omitted). Again, the creditor in a bail bond contract is the court—not the party who pays the premium. *Tyler,* 797 P.2d at 25. The bottom line here is that Espinoza is not an "insured"

---

**14.** The plain language of section 10–2–704(1)(a) also imposes a fiduciary duty with regard to an "insurer." This fiduciary duty is not at issue in this case.

within the statute's meaning and the theories to make it so attempt to drive a square peg into a round hole.

¶ 24 The ALJ, the Commissioner, the court of appeals, and the Division have not presented a single persuasive interpretation of section 10–2–704(1)(a) under which Trujillo owed a statutorily prescribed fiduciary duty to Espinoza. The ALJ found that the $3,500 was "an unearned premium with Ms. Espinoza as the insured." The ALJ did not provide a rationale for why Espinoza was the "insured" and the Commissioner adopted the ALJ's conclusions without discussing the issue. The court of appeals concluded that Ted Espinoza was the "insured" and his mother acted as his agent. In its brief to us, the Division makes the unsupported assertion that "an indemnitor is the insured." As we explain, the party most analogous to an "insured" in the bail bonding context is the court, not a defendant or an indemnitor. Because we do not add words to a statute, we cannot read section 10–2–704(1)(a) to create a fiduciary duty to any person who makes a cash payment to a bail bonding agent but does not qualify as an "insured" under the statute.[15] We therefore set aside the findings and conclusions adopted by the Commissioner that depend upon the fiduciary duty theory in the ALJ's initial decision. *See* § 24–4–106(7).

### D. Other Grounds Supporting the Commissioner's Action

¶ 25 While we set aside the ALJ's findings and conclusions related to a fiduciary duty under section 10–2–704(1)(a), the decision adopted by the Commissioner contains other grounds for sanctioning Trujillo. As discussed above, the General Assembly authorized the Commissioner to suspend, deny, or revoke the license of any insurance producer with bail bond authority for any violation of insurance law, article 7 of the professions and

occupations code, or Division rule. § 10–2–801(1)(c); ch. 368, sec. 7, § 12–7–106(1)(b), 2004 Colo. Sess. Laws 1752.

¶ 26 Here, Trujillo has not appealed several findings of statutory and rule violations in the ALJ's initial decision and the Commissioner's final order:

- Failing to provide Espinoza a prenumbered receipt meeting the requirements of section 12–7–108(1) and Division of Insurance Regulation 1–2–14, 3 Code of Colorado Regulations 702–1 (2011);
- Failing to report the receipt of money from Espinoza in his annual report to the Division, in violation of sections 12–7–106(1)(b) and –105(1) and Division of Insurance Regulation 1–2–14, 3 Code of Colorado Regulations 702–1 (2011);
- Failing to return money within forty-eight hours of receipt, as section 12–7–109(1)(*o*) required a bail bonding agent to do whenever the agent fails to post a bond within twenty-four hours of entering a signed contract to do so;
- Failing to provide Espinoza a prenumbered receipt meeting the requirements of section 12–7–108(4); and
- Failing to provide Espinoza a disclosure form, as required by section 12–7–108(9) and Division of Insurance Regulation 1–2–14, 3 Code of Colorado Regulations 702–1 (2011).

¶ 27 In arguments to the ALJ, Trujillo minimized the documentation and reporting requirements of the statutes and regulations, and the Division's charges thereon: Trujillo's counsel characterized these charges as "just silly, technical stuff that has nothing to do with fairness, honesty, or protection of the public." However, the documentation and reporting requirements further the General Assembly's intent that licensees meet a standard of competence, trustworthiness, and financial responsibility for which the Insurance Commissioner is the responsible enforcement

---

**15.** The Division also argued that Division Regulation 1–2–1 established a fiduciary duty to Espinoza. However, that regulation implements the Division's authority under section 10–2–704(1)(a) and therefore the fiduciary duties under that regulation are restricted to an "insured" within the meaning of the statute. Further, we note that section 10–2–705, C.R.S. (2013), adopted by

the General Assembly in 2012 to include documentation and reporting requirements corresponding to those included in repealed section 12–7–108, does not provide for or incorporate by reference any prescribed fiduciary duty standard such as that contained in section 10–2–704(1)(a). Nor did Title 12 contain such a standard.

officer. *See* § 10–2–801(1)(i). They enable the Division to fulfill its oversight and enforcement responsibilities by preventing licensees from hiding abuses. *See* § 10–2–801(1)(c); ch. 368, sec. 7, § 12–7–106(1)(b), 2004 Colo. Sess. Laws 1752.

¶ 28 Trujillo's notice of appeal and briefing to the court of appeals did not appeal and contest the five recordkeeping and reporting violations for which the ALJ found the Division had established a basis for sanction. Thus, issues related thereto have not been preserved on appeal. *Vikman v. Intern'l Broth. of Elec. Workers, Local Union No. 1269*, 889 P.2d 646, 658 (Colo.1995). Those ALJ findings and conclusions, which the Commissioner adopted, have become final. *In re Jones v. Samora*, 2014 CO 4, ¶ 32, 318 P.3d 462 (as modified).

¶ 29 We can uphold an agency action when it is clear that, based on its valid findings, the agency would have reached the same result. *Charnes v. Robinson*, 772 P.2d 62, 68 (Colo.1989). In such an instance, we can affirm without "improperly invad[ing] the administrative province." *Id.* (quoting *Salt River Project v. United States*, 762 F.2d 1053, 1061 n. 8 (D.C.Cir.1985)). Here, we cannot say with confidence what action the Commissioner may have taken based on the evidentiary record in this case, absent the ALJ's reliance on section 10–2–704(1)(a)'s fiduciary duty standard. Thus, we remand this case for the Commissioner to determine whether to reaffirm revocation of Trujillo's license and denial of his license renewal application on other grounds, impose some other sanction, or grant his license renewal application.

### III.

¶ 30 Accordingly, we reverse the judgment of the court of appeals and remand this case to the court of appeals with orders to return it to the Commissioner for further proceedings consistent with this decision.