2014 CO 38

**Dallas Jeffrey FINNEY, Petitioner**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**Supreme Court Case No. 12SC276**

Supreme Court of Colorado.

May 27, 2014

Attorneys for Petitioner: Douglas Wilson, Public Defender, Rebecca R. Freyre, Denver, CO

Attorneys for Respondent: John W. Suthers, Attorney General, John D. Seidel, Senior Assistant Attorney General, Denver, CO

JUSTICE MÁRQUEZ delivered the Opinion of the Court.

¶ 1 Section 16–11–206, C.R.S. (2013), requires a court to advise a probationer, at or before the commencement of a hearing on a revocation complaint, of the possible penal-

ties he may face. In this case, we consider whether, to satisfy due process, Crim. P. 11(b)(4) independently requires a court to advise a probationer of the possible penalties he faces when he admits to a violation of a deferred judgment agreement.[1] Here, the record reflects that the defendant waived his statutory right to an advisement at his revocation hearing. The record also reflects that, prior to his revocation hearing, the defendant was advised on several occasions of the potential penalties he faced if his deferred judgment was revoked. Thus, we conclude that even if the defendant had not waived his statutory right to an advisement under section 16–11–206, the requirement of that statute was met in this case. We further hold that section 16–11–206 does not incorporate Crim. P. 11(b) or otherwise embody a constitutional due process right to a penalty advisement that cannot be waived by counsel. Thus, where, as here, a defendant waives his statutory right under section 16–11–206 to a penalty advisement at a revocation hearing, neither Crim P. 11(b) nor constitutional due process independently require such an advisement. Accordingly, we affirm the court of appeals' decision upholding the trial court's denial of postconviction relief.

## I. Facts and Procedural History

¶ 2 In 2003, Petitioner, Dallas Jeffrey Finney ("Finney"), was charged with two counts of sexual assault-helpless victim[2] and two counts of sexual assault-victim incapable.[3] Beginning in July 2004, Finney entered into a series of plea agreements before the final agreement was accepted by the trial court in February 2005. During this time, five different trial court judges reviewed the agreements, and at several junctures, Finney was advised of the potential penalties he faced.[4]

¶ 3 In July 2004, Finney entered into his first plea agreement, agreeing to plead guilty to one count of class four felony sexual as-

sault. Under the agreement, the judgment and sentence would be deferred for four years, and Finney would be placed on supervised probation. Finney signed a written plea advisement which stated that the potential penalties for the offense were "2 years to life imprisonment ... with mandatory 3 years parole." In addition to the written advisement, the trial court verbally informed Finney of the potential life imprisonment penalty and questioned Finney to ensure that he had read and understood the advisement. After reviewing the probation department's presentence report, the trial court ultimately rejected the plea agreement.

¶ 4 In November 2004, Finney entered into a second plea agreement, which required him to plead guilty to one count of class four felony sexual assault and one count of class three misdemeanor harassment. The second plea agreement provided that the judgment and sentence would be deferred on the felony, but that the misdemeanor would remain on Finney's record. The trial court again advised Finney of the possible penalties, which it described as a maximum of "life imprisonment in the State Department of Corrections and a fine from two to $500,000, plus three years of mandatory parole." When asked by the trial court if he wished to plead guilty "[k]nowing the possible penalties and places of confinement," Finney responded, "yes." Later in the hearing, however, when the court asked Finney if he wished to make a statement in mitigation of his offense, Finney insisted that he was "not a sexual offender" and that he "didn't do this." In light of these statements, the trial court vacated Finney's plea, stating that it would not accept a guilty plea from a defendant who maintained his innocence.

¶ 5 In February 2005, Finney entered into a third plea agreement which provided that Finney would plead guilty to one count of class four felony sexual assault and one count

---

1. We granted certiorari on the following issue: Whether the plain language of section 16–11–206(2), C.R.S. (2012), and the requirements of Crim. P. 11(b) require a court to advise a defendant of the possible penalties he faces upon a guilty plea to a revocation complaint.

2. § 18–3–402(1)(h), C.R.S. (2003).

3. § 18–3–402(1)(b), C.R.S. (2003).

4. The court of appeals' opinion provides a helpful chart explaining the roles of the various trial court judges involved in this case. *See People v. Finney*, 2012 COA 38, ¶ 23, 328 P.3d 205.

of class one misdemeanor third degree assault. Under this agreement, the judgment and sentence would be deferred on the felony, but, among other conditions, Finney would be subject to intensive supervised probation, would be required to serve up to ninety days in jail, and would have to submit to sex offender testing and treatment. Once again, the trial court advised Finney that the penalty for the class four felony was two years to life imprisonment, plus three years of mandatory parole that "could be extended beyond that." [5] And, once again, Finney acknowledged to the court that he understood that "those penalties would not apply unless [he] violated" the terms of the deferred judgment agreement. In response to questions from the court, Finney stated that he had read the written agreement; his counsel had explained it to him; he understood the alternatives he had to entering into the agreement; he had received no additional promises or commitments that were not in the agreement; he was satisfied with his plea counsel's representation; he had not been coerced to accept the agreement; and the decision to accept the plea agreement was his alone. The trial court then accepted Finney's guilty plea.

¶ 6 In June 2008, the prosecution filed a complaint to revoke Finney's deferred judgment agreement, alleging that Finney violated the conditions of the agreement because he was terminated from the sex offender treatment program. In two separate appearances in August 2008, Finney, through defense counsel, waived any advisement on the complaint.

¶ 7 At a dispositional hearing on the revocation complaint in September 2008, defense counsel informed the court that Finney would admit to violating the conditions of the deferred judgment agreement and that the

prosecutor would recommend a sentence of community corrections if Finney were accepted into such a facility. The prosecutor confirmed that she had indicated to Finney's counsel that she would "go along" with a probation department recommendation for a community corrections placement. The trial court explained that it would accept Finney's admission of the violation, but that it would not be bound by the prosecutor's recommendation of community corrections. Finney acknowledged that community corrections was not a condition of his admission to the violation of the deferred judgment agreement; he further stated that his admission was knowing and voluntary. The court accepted Finney's admission and set the case for sentencing. The court did not advise Finney of the potential sentence of imprisonment he faced if he was not accepted into community corrections.

¶ 8 Finney later learned that he was not eligible for community corrections because he had been terminated from the sex offender treatment program. Because Finney was not eligible for community corrections, the court sentenced him to two years to life in the Department of Corrections.

¶ 9 Finney filed a timely motion for postconviction relief under Crim. P. 35(c), arguing, among other things, that the revocation court violated his due process rights by failing to advise him of the potential penalties prior to his admission of the violation of the deferred judgment agreement.[6] Finney argued that the February 2005 advisement (when he pled guilty and entered into the deferred judgment agreement) did not satisfy his due process right to a penalty advisement when he admitted to violating the deferred judgment agreement four years later.

---

**5.** Finney signed the third plea agreement which stated the correct potential penalty (two years to life imprisonment). He also signed supplemental paperwork attached to the plea agreement that correctly stated that the mandatory period of parole was ten years to life, but incorrectly stated that he was pleading guilty to a class five or six felony.

**6.** Finney's postconviction motion raised four claims: (1) the revocation court's failure to advise Finney of the potential penalties prior to his

admission of violation of the deferred judgment agreement violated his right to due process; (2) the revocation court's denial of Finney's request for a continuance violated his rights to due process, to present a defense, to confront witnesses, and to the effective assistance of counsel; (3) counsel's representation at the revocation hearing was constitutionally deficient; and (4) Finney should be resentenced to probation. Only the first claim is at issue here.

Following a hearing, the trial court denied Finney's postconviction motion.

¶ 10 The court of appeals affirmed the trial court's denial of postconviction relief. *People v. Finney*, 2012 COA 38, ¶ 2, 328 P.3d 205. Relevant here, the court of appeals rejected Finney's contention that constitutional due process required the revocation court to advise Finney of the penalties he faced if the deferred judgment agreement were revoked. *Id.* at 33. The court observed that counsel, in Finney's presence, had waived Finney's statutory right to be advised of the possible penalties Finney faced if the deferred judgment agreement were revoked. The court concluded that: (1) counsel could waive Finney's rights to be advised of the possible penalties under section 16–11–206(2) and Crim. P. 32(f)(2) and enter an admission to the violation of the deferred judgment agreement; (2) the requirements of Crim. P. 11(b) did not apply in this case because in admitting to a violation of the deferred judgment agreement, Finney did not face a charge on a new substantive offense or plead guilty to a new crime; (3) Crim. P. 11 expressly applies only to the entry of a guilty plea and does not require that a defendant facing revocation of a deferred judgment agreement be readvised; (4) Finney was advised of his rights under Crim. P. 11 when he pled guilty and entered into the deferred judgment agreement in February 2005, and he assured the court that he understood the agreement, had entered into it voluntarily, knowingly, and intelligently, and that he understood that the penalties would not apply unless he violated the deferred judgment agreement; and (5) Finney was repeatedly advised of the potential penalties as required by Crim. P. 11(b). *Id.* at ¶¶ 35–36, 39–41.

¶ 11 In dissent, Judge Hawthorne viewed Finney's admission to the violation of the deferred judgment agreement as a "guilty plea" because section 16–11–206(2) states that the revocation court shall require the probationer to "plead guilty or not guilty." *Id.* at ¶ 78 (Hawthorne, J., dissenting). Judge Hawthorne therefore construed Finney's due process claim more broadly to be "whether the revocation court … violated his due process right to enter a knowing,

voluntary, and intelligent guilty plea by failing to determine, as required by Crim. P. 11(b)(4), whether he understood that, by pleading guilty to violating the terms of his deferred judgment and sentence, he could receive an indeterminate sentence of two years to life." *Id.* at ¶ 79. Judge Hawthorne reasoned that because Crim. P. 11(b) prohibits a court from accepting "a plea of guilty" without first determining that the defendant "understands the possible penalty or penalties," the requirements of this rule apply to revocation proceedings. *Id.* at ¶¶ 82–87. Thus, Judge Hawthorne concluded that the revocation court had an independent obligation under Crim. P. 11(b)(1) and (4) to determine that Finney understood the penalties he faced. *Id.* at ¶ 89.

## II. Standard of Review

¶ 12 This case raises a question of statutory interpretation which we review de novo. *Trujillo v. Colo. Div. of Ins.*, 2014 CO 17, ¶ 12, 320 P.3d 1208. In interpreting a statute, "[o]ur objective is to effectuate the intent and purpose of the General Assembly." *Id.* To determine the legislature's intent, we look first to the plain language of the statute. *Bostelman v. People*, 162 P.3d 686, 689 (Colo.2007). Where the statutory language is clear and unambiguous, we apply the plain and ordinary meaning of the provision. *Trujillo*, ¶ 12. In reviewing a comprehensive statutory framework, we must construe each provision to further the overarching legislative intent. *Id.*

## III. Analysis

¶ 13 We begin our analysis by briefly reviewing deferred judgments generally. We then analyze the statutory right to a penalty advisement at a revocation hearing under section 16–11–206, and we conclude that the adequacy of the statutory advisement must be viewed in light of the record as a whole, including consideration of the adequacy of any advisement received by the defendant prior to entering an initial guilty plea. Next, we examine whether section 16–11–206 imports Crim. P. 11(b) or otherwise provides a constitutional due process right to a penalty advisement that cannot be waived by counsel.

After examining the relevant case law and statutory scheme, we conclude that section 16–11–206 does not import Crim. P. 11(b) or otherwise embody a constitutional right to a penalty advisement at a revocation hearing.

## A. Deferred Judgments

¶ 14 A deferred judgment and sentence, as authorized by statute, is a unique dispositional alternative to the traditional guilty plea. *People v. Widhalm,* 642 P.2d 498, 500 (Colo.1982). Under section 18–1.3–102(1), C.R.S. (2013), a court may defer entry of judgment of conviction and imposition of sentence on a defendant's guilty plea for up to four years. *See Kazadi v. People,* 2012 CO 73, ¶ 12, 291 P.3d 16, 21. In exchange for the continuance, the defendant stipulates to probation-like conditions of supervision. § 18–1.3–102(2); *Kazadi,* 291 P.3d at 21. If the defendant fully complies with the conditions of the deferred judgment agreement, the previously entered guilty plea is withdrawn and the charges are dismissed with prejudice. § 18–1.3–102(2); *Kazadi,* 291 P.3d at 21. Importantly, section 18–1.3–102(2) requires a written stipulation, signed by the prosecutor and the defendant, setting forth the conditions of the deferred judgment agreement. "The purpose of the written stipulation is to ensure that the defendant knows prior to the entry of a guilty plea the consequences of violating the conditions of the deferred judgment and sentence." *Widhalm,* 642 P.2d at 500. "Like probation, a deferred judgment is a privilege, where the defendant is the primary beneficiary of a procedure that ultimately may result in dismissal of the charges against him or her." *People v. Manzanares,* 85 P.3d 604, 607 (Colo.App.2003). And, like probation, a deferred judgment may be revoked—and the court may enter judgment and impose sentence on the defendant's previously entered guilty plea—if the defendant violates any of the stipulated conditions of the deferred judgment agreement. § 18–1.3–102(2).

## B. Statutory Right to a Penalty Advisement under Section 16–11–206

¶ 15 A defendant facing revocation of a deferred judgment is entitled to the same procedural safeguards as a defendant facing revocation of parole or probation. *See* § 18–1.3–102(2) (in a proceeding to revoke a deferred judgment, "the procedural safeguards required in a revocation of probation hearing shall apply"); *People v. Allen,* 973 P.2d 620, 622 (Colo.1999). Section 16–11–206, which governs the procedures at a revocation hearing, provides for certain advisements at revocation hearings:

(1) At the first appearance of the probationer in court or at the commencement of the hearing, whichever is first in time, the *court shall advise the probationer as provided in section 16–7–206 insofar as such matters are applicable* . . . .

(2) At or prior to the commencement of the hearing, the *court shall advise the probationer of the charges against him and the possible penalties therefor* and shall require the probationer to plead guilty or not guilty.

§ 16–11–206(1)–(2) (emphasis added).

¶ 16 Counsel may waive a defendant's statutory rights. *See In re Lynch,* 783 P.2d 848, 853 (Colo.1989) (recognizing counsel's ability to waive statutory right to a mental health hearing); *see also People v. Baird,* 66 P.3d 183, 189 (Colo.App.2002) ("A statutory right may be waived by counsel's statements.") (citing *People v. [Gordon] Allen,* 744 P.2d 73, 74 n. 2 (Colo.1987)). Waiver of statutory rights must be voluntary, but need not be knowing and intelligent. *People v. Moody,* 676 P.2d 691, 695 (Colo.1984).

¶ 17 Here, the record reflects that plea counsel, in Finney's presence, expressly waived any advisement on the revocation complaint at two separate hearings before the trial court. In so doing, Finney voluntarily waived his right to a penalty advisement at the revocation hearing under section 16–11–206(2).

¶ 18 Even if Finney had not waived his statutory right to an advisement under section 16–11–206(2), we conclude that the advisement requirement was met here because Finney was advised of the potential penalties "prior to the commencement of the

[revocation] hearing." *See Craig v. People,* 986 P.2d 951, 963–64 (Colo.1999) (advisement is sufficient if " 'the record as a whole' shows that the defendant was given sufficient notice of the matter in question").

¶ 19 Here, Finney received no fewer than six separate advisements regarding the potential penalties for pleading guilty to the charged offenses. Finney was advised both orally and in writing before entering into the first plea agreement. He was again advised in writing in a presentence report issued in August 2004.[7] The court provided Finney with another oral advisement before he entered into the second plea agreement. Finally, Finney was advised both orally and in writing before entering into the third plea agreement, and he stated on the record that he understood those advisements. Considering the record as a whole, we conclude that Finney was adequately advised of the potential penalties "[a]t or prior to the commencement of the [revocation] hearing," as required by section 16–11–206(2).

¶ 20 Turning instead to section 16–11–206(1), Finney contends that because this provision refers to section 16–7–206, the court must advise a defendant facing revocation "as to the maximum and minimum penalties that the court may impose," even where, as here, the defendant is not being charged with a new criminal offense. *See* § 16–7–206(1)(a). We disagree.

¶ 21 Section 16–11–206(1) requires that a court "advise the probationer as provided in section 16–7–206" only *"insofar as such matters are applicable"* to the revocation hearing. § 16–11–206(1) (emphasis added). Section 16–7–206(1), in turn, provides protections for defendants who are "charged with an offense" and wish to "tender a plea of guilty to that offense." Under section 16–7–206(1)(a), prior to accepting a "plea of guilty to an offense ... [t]he court shall ... advise[ ] the defendant as to the maximum and minimum penalties that the court may impose." Accordingly, a revocation defendant facing a new substantive criminal offense is entitled to a penalty advisement

under section 16–7–206 because the defendant is being "charged with an offense."

¶ 22 Because the revocation statute incorporates section 16–7–206 only "insofar as such matters are applicable," where, as here, the revocation defendant is not charged with a criminal offense, section 16–7–206(1) does not apply. The revocation complaint in this case alleged that Finney violated the terms of the deferred judgment agreement, but did not allege any new substantive criminal offenses. Thus, Finney was not entitled to a statutory penalty advisement under section 16–7–206(1)(a).

**C. Section 16–11–206 Neither Incorporates Crim. P. 11(b) nor Embodies a Constitutional Right to Penalty Advisement in a Revocation Proceeding**

¶ 23 Finney seeks to circumvent the waiver of his statutory rights by recasting the right to a penalty advisement at a revocation hearing as a constitutional right that cannot be waived by counsel. Specifically, Finney argues that the revocation statute incorporates the requirements of Crim. P. 11(b) and that constitutional due process required the court to comply with that rule by ensuring that Finney "[understood] the possible penalty or penalties" when accepting Finney's admission to a violation of the deferred judgment agreement. *See* Crim. P. 11(b)(4).

¶ 24 First, Finney notes that section 16–11–206(2) requires the probationer to "plead guilty or not guilty." He contends that, because Crim. P. 11 governs "pleas," section 16–11–206(2) therefore requires compliance with Crim. P. 11(b) at revocation hearings to ensure compliance with constitutional due process. We disagree. We do not read section 16–11–206(2) to import Crim. P. 11(b) simply because it contains the phrase "plead guilty or not guilty." Certainly, where a defendant pleads guilty to a criminal offense, the defendant must be affirmatively advised of the potential penalties before the court accepts the plea. *E.g., Young v. People,* 30 P.3d 202, 205 (Colo.2001); *Dawson v. People,* 30 P.3d 213, 214–15 (Colo.2001). However, a defendant facing revocation of a

---

**7.** Finney later attached this report as an exhibit to his motion to enforce the first plea agreement.

deferred judgment agreement simply admits or denies that he violated a condition of the agreement; in so doing, he is not entering a plea to an offense. Indeed, Crim. P. 32(f), which governs revocation proceedings and closely parallels section 16–11–206, makes clear that a probationer facing revocation does not enter a "plea" to a violation, but rather, is required to "admit or deny" the charges in such a proceeding. Crim. P. 32(f)(2). To the extent that a defendant in a revocation proceeding is charged with, and wishes to plead guilty to, the commission of a *new criminal offense,* his right to an advisement on the potential penalties for such an offense flows directly from section 16–7–206 and Crim. P. 11—but not from the revocation statute.

¶ 25 Alternatively, Finney argues that section 16–11–206(1) incorporates the requirements of Crim. P. 11 because this statutory provision refers to section 16–7–206, which provides the procedural requirements for guilty pleas in criminal proceedings. Finney observes that section 16–7–206 is contained in Article 7, Part 2, titled "Arraignment," and that section 16–7–204 requires all arraignments to be conducted "in compliance with the provisions of applicable rules of criminal procedure." Thus, he concludes, section 16–11–206(1) requires compliance with Crim. P. 11. Again, we disagree. As discussed above, the revocation statute incorporates section 16–7–206 only "insofar as such matters are applicable." § 16–11–206(1). Where, as here, a defendant facing revocation is not charged with a new substantive offense, section 16–7–206 is not applicable. Likewise, by its express terms, section 16–7–204 addresses the "procedures to be followed upon arraignment" on a substantive criminal offense and is inapplicable where revocation is not founded on a new criminal offense.

¶ 26 Finally, we disagree with Finney's contention that compliance with the penalty advisement of Crim. P. 11(b)(4) in revocation proceedings is required to comport with constitutional due process. Recognizing that there are "critical differences between criminal trials and ... revocation hearings," *People v. Atencio,* 186 Colo. 76, 79, 525 P.2d 461, 462 (1974), we have long held that "[d]efendants in revocation proceedings are not entitled to the full range of constitutional guarantees afforded to defendants in criminal prosecutions," *Allen,* 973 P.2d at 622. *See also Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ("We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations."). As the Supreme Court observed in *Morrissey,* "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special ... restrictions." 408 U.S. at 480, 92 S.Ct. 2593.

¶ 27 Because a revocation hearing is held for different purposes than a criminal trial, the rights extended to a probationer facing revocation are "significantly reduced" when compared to a defendant facing substantive criminal charges. *Byrd v. People,* 58 P.3d 50, 56 (Colo.2002). For example, a probationer has no right to a jury at a revocation proceeding, *id.* (citing § 16–11–206(1), C.R.S. (2002)); he cannot plead "not guilty by reason of insanity," *id.* (citing *People ex rel. Gallagher v. Dist. Court,* 196 Colo. 499, 502, 591 P.2d 1015, 1016 (1978)); courts presiding over revocation hearings are not required to give *Curtis* advisements on the right to testify, *id.* (citing *Allen,* 973 P.2d at 622); the rules of evidence are relaxed, *id.* at 55 (citing *Holdren v. People,* 168 Colo. 474, 479, 452 P.2d 28, 30 (1969)); the exclusionary rule is inapplicable absent government activity that constitutes bad faith or egregious misconduct, *id.* at 56 (citing *People v. Ressin,* 620 P.2d 717, 720–21 (Colo.1980)); statements obtained in violation of *Miranda* may be nevertheless admissible, *id.* (citing *State v. Mason,* 56 Or.App. 164, 641 P.2d 1139, 1141 (1982)); and a probationer's invocation of the Fifth Amendment to decline to answer specific questions at a revocation proceeding may nevertheless be used against him, *id.* (citing *Asherman v. Meachum,* 957 F.2d 978, 981–83 (2d Cir.1992)).

¶ 28 As we stated in *Atencio,* and reiterated in *Allen* and again in *Byrd,* a

defendant facing revocation is entitled only to the following due process requirements:

(1) written notice of the alleged violations; (2) disclosure of the evidence against the probationer; (3) opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; and (5) a written or oral statement on the record by the fact finder as to the evidence relied on and the reasons for revocation.

*Byrd*, 58 P.3d at 56 & n. 8 (citing *Allen*, 973 P.2d at 620; *Atencio*, 186 Colo. at 78, 525 P.2d at 462). Although we have required that a defendant be advised of the possible penalties before pleading guilty to a substantive criminal offense, neither this court, nor the United States Supreme Court, has ever recognized a constitutional due process right to be readvised of these possible penalties before admitting to a violation in a revocation hearing.

## IV.  Conclusion

¶ 29 In sum, section 16–11–206 does not incorporate the requirements of Crim. P. 11(b) or otherwise embody a constitutional due process right to a penalty advisement at a revocation hearing.  Here, Finney waived his statutory right to a penalty advisement under section 16–11–206, and neither Crim. P. 11(b) nor constitutional due process independently required the court to readvise Finney of the possible penalties before he admitted to the violation of the deferred judgment agreement.  Accordingly, we affirm the judgment of the court of appeals.