2017 CO 105

**The PEOPLE of the State of Colorado,
In the Interest of Minor Children:
J.W. and N.W., Petitioner**

**v.**

**C.O., Respondent**

**Supreme Court Case No. 16SC731**

Supreme Court of Colorado.

December 11, 2017

ror, we should apply our decision today only    prospectively.

Attorneys for Petitioner: Robert W. Loeffler, County Attorney, Clear Creek County, Sue S. Thibault, Assistant County Attorney, Georgetown, Colorado.

Guardian ad Litem for the Minor Children: Wendy M. Hickey, P.C., Wendy M. Hickey, Breckenridge, Colorado.

Attorneys for Respondent: The Noble Law Firm, LLC, Antony Noble, Lakewood, Colorado.

JUSTICE MÁRQUEZ delivered the Opinion of the Court.

¶1 Section 19-3-604(1)(c) of the Colorado Children's Code provides that a juvenile court may terminate a parent's legal relationship with a child if the child is adjudicated dependent or neglected and the court finds by clear and convincing evidence that certain additional conditions exist. § 19-3-604(1)(c)(I)–(III), C.R.S. (2017). Here, we must determine whether a juvenile court validly terminated a mother's parent-child legal relationship without first entering a formal written order adjudicating her children as dependent or neglected.

¶2 In this case, the father entered a no-fault admission to the Clear Creek County Department of Human Services' petition in dependency or neglect, and the trial court adjudicated the children dependent or neglected with respect to him. The mother denied the allegations in the petition and proceeded to a jury trial, but the trial did not result in an adjudication of the children's status. Rather than request a retrial, however, the mother chose to admit the Department's allegation that her children were dependent or neglected due to an injurious environment. The trial court accepted the

mother's admission and began immediately to discuss drawing up a treatment plan for her. The record reflects that the court and the parties thereafter proceeded as if the court had adjudicated the children as dependent or neglected, but the court did not enter a written order of adjudication before it terminated the mother's parental rights approximately a year later.

¶3 In a published, split decision, the court of appeals vacated the termination order. People in Interest of J.W., 2016 COA 125, —— P.3d ——. Relevant here, the court of appeals held that because the trial court failed to enter an order adjudicating the children as dependent or neglected, the trial court lacked subject matter jurisdiction to terminate the mother's parental rights. Id. at ¶¶ 23, 27, 32. We granted the Department's petition for certiorari review.[1]

¶4 We disagree with the court of appeals that the trial court's failure to enter an order adjudicating the children's status as neglected or dependent divested the trial court of jurisdiction to proceed to termination of the parent-child legal relationship in this case. Instead, because the trial court accepted the parents' admission that the children were neglected or dependent, we conclude that the purpose of the adjudicative process was met and the children's status as neglected or dependent was established, thus permitting state intervention into the familial relationship. Moreover, both the Department and the mother proceeded as if the court had adjudicated the status of the children. The mother participated in subsequent hearings and attempted to comply with the trial court's treatment plan. She never sought to withdraw her admission, and she never challenged the trial court's jurisdiction or otherwise objected below to the trial court's verbal

or written termination orders finding that the children had been adjudicated neglected or dependent. Under these circumstances, we conclude that the trial court's failure to enter an adjudicative order confirming the children's status as neglected or dependent did not impair the fundamental fairness of the proceedings or deprive the mother of due process. Accordingly, we reverse the judgment of the court of appeals and remand for the court of appeals to consider the mother's other contentions on appeal.

## I. Facts and Procedural History

¶5 In May 2014, the Clear Creek County Department of Human Services sought temporary protective custody of J.W., then five years old, and N.W., then ten months old, based on allegations that an unrelated child suffered serious injuries in their home, and that their mother, C.O. ("Mother"), was unable to protect them. Shortly after being granted temporary custody of the children, the Department filed a petition in dependency or neglect before the Clear Creek County District Court[2] concerning the children, naming Mother as a respondent[3] and alleging the children were dependent or neglected under section 19-3-102(1)(a), C.R.S. (2017), on the ground that Mother had "abandoned" them, "subjected [them] to mistreatment or abuse," or "suffered or allowed another to mistreat or abuse [them] without taking lawful means to stop such mistreatment or abuse and prevent it from recurring." The Department later amended its petition, alleging instead that the children were dependent or neglected under sections 19-3-102(1)(b) and -(1)(c) because they "lack[ed] proper parental care" and because their "environment is injurious to [their] welfare." Mother denied the allegations.

---

1. We granted certiorari to review the following issue:

Whether failure to enter a written order adjudicating a child dependent or neglected under section 19-3-505(7)(a), C.R.S. (2016), after accepting a parent's admission to the allegations, divests the juvenile court of its subject matter jurisdiction to order a termination of the parent-child relationship.

2. The Colorado Children's Code defines "juvenile court" to include the juvenile division of a district court outside of the City and County of Denver. § 19-1-103(70), C.R.S. (2017).

3. The children's father was also named as a respondent to the petition. He entered a no-fault admission to the allegations in the petition, and the court adjudicated the children dependent or neglected with respect to him on July 10, 2014. The court terminated the father's parental rights on September 23, 2015. Neither the children's status with respect to the father nor the termination of the father's parental rights is at issue here.

¶6 The court held a jury trial on July 10-11, 2014, to adjudicate the status of the children. The jury found the children were not dependent or neglected for lack of proper parental care, but it was unable to return an answer as to whether they were dependent or neglected due to an injurious environment. Thus, the trial did not result in an adjudication of the children's status.

¶7 The trial court held a hearing on July 14, 2014, to discuss, among other things, scheduling a new trial to adjudicate the status of the children. Rather than request a new trial, Mother chose to admit the allegation that the children were dependent or neglected under section 19-3-102(1)(c) due to an injurious environment. Mother told the court that she wished to forgo a second trial because she wanted to get "[her] kids back the speediest way ... possible" and holding a new trial would "take time."

¶8 After questioning Mother regarding the voluntariness of her admission and whether she had had sufficient opportunity to discuss the case with her lawyer, the trial court stated, "All right, then ... I'll make the admission that the mother's entered the admission that the child—children's environment is injurious." Immediately thereafter, the court began to discuss approval of a treatment plan for Mother and setting a case review hearing. Nothing in the record indicates that Mother requested a deferred adjudication, or that she was offered one. At the close of the July 14 hearing, the court remarked to the parties on the record, "I'm glad you all are able to reach an agreement on this case. ... I think you're reaching a common goal here to get the kids home. ... I'm glad that you all worked this out, rather than, than going through another trial." The Department asserts (and Mother does not dispute) that immediately after the July 14 hearing, a proposed written adjudication and disposition order was distributed to and ap-proved by the parties. However, through an apparent oversight, the proposed written order w as not submitted to the court for signature.

¶9 Mother worked on the treatment plan approved by the trial court for approximately a year, and the court held several review hearings during that period. Mother, who was represented by counsel throughout the proceedings, never withdrew her admission or challenged the court's continued jurisdiction. In June 2015, the Department moved to terminate Mother's parental rights. The Department's motion alleged that the children had been adjudicated dependent or neglected with respect to Mother on July 14, 2014. Mother did not challenge the Department's assertion.

¶10 Following a two-day trial, the trial court entered an order on September 23, 2015, terminating Mother's parental rights. The termination order states among its findings that "the children have been adjudicated dependent and neglected as to [Mother]." Mother did not object to this finding.

¶11 Mother appealed the termination order on October 28, 2015. When listing relevant dates in the case in her briefing to the court of appeals, Mother indicated that the trial court entered an adjudication order on July 14, 2014.

¶12 After Mother filed her appeal, the Department realized that the trial court had never signed the written order of adjudication. The Department then filed with the court the proposed adjudication and disposition order previously approved by the parties. The trial court signed the order on October 30, 2015, stating that it w as "entered and effective" as of July 14, 2014.

¶13 On March 2, 2016, the court of appeals requested supplemental briefing regarding whether the children were adjudicated dependent or neglected and whether the trial court had jurisdiction to terminate Mother's parental rights.[4]

---

4. The court of appeals requested briefing on the following questions:

Did the trial court adjudicate the children dependent and neglected with respect to appellant before the entry of the written order of adjudication and disposition dated October 30, 2015? If your answer to this question is "yes," please cite the specific location in the trial court record that you contend constitutes evidence of an adjudication with respect to appellant.

If the trial court did not adjudicate the children dependent and neglected with respect to appellant before the entry of the written order of adjudication and disposition dated October 30, 2015, did the trial court have jurisdiction

¶14 In a published, split opinion, a division of the court of appeals vacated the trial court's judgment terminating Mother's parental rights. People in Interest of J.W., 2016 COA 125, ¶ 35, —— P.3d ——. The panel majority adopted the analysis of Judge Lichtenstein's dissent in People in Interest of N.D.V., 224 P.3d 410 (Colo. App. 2009), and held that section 19-1-104(1)(d), C.R.S. (2017), which confers jurisdiction to a juvenile court to terminate parental rights, "presupposes an adjudication of the child as dependent or neglected." J.W., ¶ 23 (quoting N.D.V., 224 P.3d at 423 (Lichtenstein, J., dissenting)). Reasoning that "the General Assembly's statutory grant of subject matter jurisdiction is limited until the adjudication order has been entered," the majority concluded that "[w]ithout an adjudication, a court does not acquire subject matter jurisdiction to terminate a parent-child relationship." Id. The majority noted that, although Mother did not contest jurisdiction before the trial court, "a challenge to a court's subject matter jurisdiction may be raised at any time." Id. at ¶ 16. The majority observed that the trial court never expressly stated at the July 14 hearing that it was adjudicating the status of the children with respect to Mother. Id. at ¶ 27. Because no adjudication order had entered before the termination proceedings, the majority concluded that the trial court "lacked jurisdiction to enter the order terminating [M]other's parental rights." Id. at ¶ 32. The majority further held that the trial court lacked jurisdiction to enter the adjudication order it later signed on October 30, 2015, because by that date Mother's appeal had transferred jurisdiction over the case to the court of appeals and divested the trial court of authority to take further substantive action. Id. at ¶ 33. Accordingly, the majority vacated the trial court's October 30, 2015 adjudication order and the September 23, 2015 judgment terminating Mother's parental rights, and remanded the case with instructions to "resume proceedings at the adjudicatory stage." Id. at ¶ 35.

¶15 Judge Hawthorne dissented, concluding that the failure to enter an adjudication order in dependency or neglect actions does not divest the juvenile court of its subject matter jurisdiction to order a termination of the parent-child relationship under section 19-3-604(1)(c), C.R.S. (2017). Id. at ¶¶ 36-37 (Hawthorne, J., dissenting). Judge Hawthorne adopted the analysis of the majority opinion in N.D.V., which held that when a court accepts a parent's admission that the child is neglected or dependent, the child's status is established and the court has jurisdiction to conduct further proceedings, even if the court thereafter fails to enter an adjudicatory order reflecting that status. Id. at ¶ 37 (citing N.D.V., 224 P.3d at 418). Judge Hawthorne concluded that any error in terminating Mother's parent-child relationship with the children without first entering an adjudication order was procedural, not jurisdictional. Id. Moreover, he reasoned, Mother waived any challenge to this procedural error by failing to raise the issue in the trial court. Id.

¶16 We granted the Department's petition for certiorari review.

## II. Standard of Review

■ ¶17 Where the question of whether a court lacked subject matter jurisdiction does not involve a factual dispute, the determination of that court's subject matter jurisdiction is a question of law that we review de novo. See Tulips Invs., LLC v. State ex rel. Suthers, 2015 CO 1, ¶ 11, 340 P.3d 1126, 1131.

■ ¶18 We also review questions of statutory construction de novo. Trujillo v. Colo. Div. of Ins., 2014 CO 17, ¶ 12, 320 P.3d 1208, 1212. In interpreting a statute, "[o]ur objective is to effectuate the intent and purpose of the General Assembly." Id. at 1212-13. To determine the legislature's intent, we look first to the plain language of the statute. Bostelman v. People, 162 P.3d 686, 689 (Colo. 2007). Where the statutory language is clear and unambiguous, we apply the plain and ordinary meaning of the provision. Trujillo, ¶ 12, 320 P.3d at 1213.

## III. Analysis

¶19 The court of appeals reasoned that because the trial court did not enter an order

---

to enter post-adjudicatory orders, including, but not limited to, dispositional orders and an

order terminating appellant's parental rights?

of adjudication, the trial court lacked jurisdiction to terminate Mother's parent-child legal relationship. J.W., ¶¶ 17, 32. In other words, the court of appeals concluded that entry of an order of adjudication is a jurisdictional prerequisite to termination of the parent-child legal relationship under section 19-3-604(1)(c).

¶20 We disagree. A juvenile court's jurisdiction over a child in a dependency or neglect proceeding rests on the status of the child as neglected or dependent. § 19-1-104(1)(b); People in Interest of A.M.D., 648 P.2d 625, 639 (Colo. 1982); N.D.V., 224 P.3d at 414-15. Here, Mother conceded that the children were dependent or neglected due to an injurious environment under section 19-3-102(1)(c). Mother's admission to the allegation in the petition, which was accepted by the court as knowingly and voluntarily made, established the children's status as dependent or neglected, and thus fulfilled the purpose of an adjudicatory hearing under section 19-3-505(1), C.R.S. (2017). The court's failure in this case to enter a formal order of adjudication confirming the children's status as dependent or neglected did not divest the court of jurisdiction over the children, nor did it impair the fundamental fairness of the proceedings or deprive Mother of due process under the circumstances of this case. Accordingly, we reverse the judgment of the court of appeals and remand for consideration of Mother's remaining contentions on appeal.

## A. "Jurisdiction" and "Subject Matter Jurisdiction"

¶21 A court's "jurisdiction" concerns its "power to entertain and to render a judgment on a particular claim." In re Estate of Ongaro, 998 P.2d 1097, 1103 (Colo. 2000). Put differently, "jurisdiction" is the court's authority to hear and determine a matter; it is the court's power to decide. See McLeod v. Provident Mut. Life Ins. Co. of Philadelphia, 186 Colo. 234, 526 P.2d 1318, 1322 (1974) (citing Klancher v. Anderson, 113 Colo. 478, 158 P.2d 923, 925-26 (1945)). A judgment rendered without jurisdiction is void, and may be attacked directly or collaterally. In re

Marriage of Stroud, 631 P.2d 168, 170 (Colo. 1981).

¶22 A court's jurisdiction generally consists of two elements: jurisdiction over the subject matter of the issue to be decided (subject matter jurisdiction), and jurisdiction over the parties (personal jurisdiction). See People in Interest of Clinton, 762 P.2d 1381, 1386 (Colo. 1988).

¶23 In its opinion here, the court of appeals appeared to use the terms "jurisdiction" and "subject matter jurisdiction" interchangeably. See J.W., ¶¶ 1, 23, 32 ("[W]e conclude that the court did not acquire jurisdiction to terminate the parent-child relationship."; "Without an adjudication, a court does not acquire subject matter jurisdiction to terminate a parent-child relationship."; "[B]ecause an adjudication is a prerequisite to termination under section 19-3-604(1)(c), the trial court lacked jurisdiction to enter the order terminating mother's parental rights.").

¶24 However, the concept of "subject matter jurisdiction" refers to the "type of cases that the court has been empowered to entertain by the sovereign from which the court derives its authority." Paine, Webber, Jackson & Curtis, Inc. v. Adams, 718 P.2d 508, 513 (Colo. 1986) (quoting Robert Casad, Jurisdiction in Civil Actions ¶ 1.01[1] (1983)). In other words, "subject matter jurisdiction" concerns the court's authority to deal with the class of cases in which it renders judgment, not its authority to enter a particular judgment within that class. In re Marriage of Stroud, 631 P.2d at 170; People v. Owen, 122 P.3d 1006, 1008 (Colo. App. 2005). Because subject matter jurisdiction concerns only the class of cases that a court may adjudicate, where "[a] court has already obtained subject matter jurisdiction, a later failure to follow statutory requirements does not divest the court of subject matter jurisdiction." Clinton, 762 P.2d at 1387.

¶25 Here, the General Assembly has conferred juvenile courts with exclusive original jurisdiction in proceedings "[c]oncerning any child who is neglected or dependent," § 19-1-104(1)(b),[5] and "[t]o terminate the legal par-

5. Under the Colorado Children's Code, a "child" is defined as a person under eighteen years of

ent-child relationship," § 19-1-104(1)(d). Because the instant case unquestionably falls within the class of cases that a juvenile court may hear pursuant to section 19-1-104(1)(b) and -104(1)(d), the trial court had subject matter jurisdiction over proceedings in this case. Instead, the question is whether the court had jurisdiction over the children when it terminated the parent-child legal relationship.

## B. The Court's Jurisdiction over the Children

¶26 Dependency or neglect proceedings are governed by Article 3 of the Colorado Children's Code, §§ 19-3-100.5 to -703, C.R.S. (2017). If the State suspects that a child may be dependent or neglected, it must file a petition under section 19-3-502, C.R.S. (2017), setting forth the facts establishing the court's jurisdiction over the child, including the age and residence of the child and the allegations establishing that the child is neglected or dependent under section 19-3-102. People in Interest of J.G., 2016 CO 39, ¶ 15, 370 P.3d 1151, 1157.

¶27 The court must notify and advise the parents in open court of their right to counsel, their right to contest the allegations in the petition, and their right to request a trial on the allegations. § 19-3-202, C.R.S. (2017); §§ 19-3-502, -503, C.R.S. (2017); A.M. v. A.C., 2013 CO 16, ¶ 12, 296 P.3d 1026, 1031.

¶28 Under section 19-3-505(1), an adjudicatory hearing serves to determine whether the allegations of the petition in dependency or neglect are supported by a preponderance of the evidence. § 19-3-505(1); see also § 19-1-103(3), C.R.S. (2017) (defining "adjudicatory hearing"). As the court of appeals correctly observed, a parent may choose to waive his or her right to a trial and instead confess, stipulate, or elect not to contest the allegations in a dependency or neglect petition. J.W., ¶ 22. If the court accepts the parent's admission, the state is relieved of the burden to prove the admitted allegations at an adjudicatory hearing. Id.; see also C.R.J.P. 4.2(c).

age. § 19-1-103(18), C.R.S. (2017).

6. If the status of the child as dependent or neglected is <u>not</u> established by a preponderance of the evidence, then the court lacks continued ju-

¶29 However, the court of appeals reasoned that, because section 19-3-604(1) requires the court in a termination proceeding to find that the child "has been adjudicated dependent or neglected," the court does not acquire jurisdiction to terminate a parent-child relationship absent an order of adjudication. See J.W., ¶¶ 23, 32.

¶30 We disagree that a juvenile court's continuing jurisdiction over a child hinges on the entry of an order of adjudication. If the allegations of a petition in dependency and neglect are established by a preponderance of the evidence, the court "shall sustain the petition." § 19-3-505(7)(a). Although section 19-3-505(7)(a) further provides that the court shall "make an order of adjudication" setting forth whether the child is neglected or dependent, section 19-1-104(1)(b) reflects that a court's jurisdiction over a child rests solely on the factual status of the child as neglected or dependent, not the formal entry of an order of adjudication reflecting that status. § 19-1-104(1)(b); see also A.M.D., 648 P.2d at 639 ("The status of being a neglected or dependent child triggers juvenile court jurisdiction over a child so circumstanced in Colorado.").

¶31 In sum, the purpose of an adjudicatory hearing is to determine whether the factual allegations in the dependency or neglect petition are supported by a preponderance of the evidence. In turn, the child's status as dependent or neglected establishes the court's continued jurisdiction over the child and permits state intervention into the familial relationship to protect the child and to provide rehabilitative services to assist the parent and child in establishing a relationship and home environment that will preserve the family unit.[6] J.G., ¶ 18, 370 P.3d at 1158; A.M.D., 648 P.2d at 640; see also People in Interest of A.M., 786 P.2d 476, 479 (Colo. App. 1989).

¶32 Here, Mother entered an admission to the Department's allegation that the children were dependent or neglected due to an injurious environment. She indicated that she

risdiction and must dismiss the petition and vacate all orders with respect to the child. § 19-3-505(6); see also J.G., ¶ 16, 370 P.3d at 1157; A.M., ¶ 12, 296 P.3d at 1031.

wanted to get "[her] kids back the speediest way ... possible" and that "[i]t's going to take time for a new trial." Her statements reflect that she considered and rejected the option of a new trial, and instead conceded the children's status as dependent or neglected so that the proceedings could move forward more quickly. The court accepted Mother's admission after determining that it was knowing and voluntary, and that Mother had had sufficient opportunity to discuss the matter with her attorney. In light of Mother's admission, the Department was relieved of the burden to prove the allegation by a preponderance of the evidence at an adjudicatory hearing and the purpose of the adjudicative process was met. The court's acceptance of Mother's admission established the status of the children as dependent or neglected and, thus, the court's continued jurisdiction over the children.

¶33 The court's failure to enter a written adjudication order confirming the children's status prior to terminating the parent-child legal relationship did not divest the court of jurisdiction because that jurisdiction rested on the status of the children as dependent or. neglected, and Mother never sought to withdraw that admission or otherwise offered the court any basis to conclude the children were not dependent or neglected.

### C. Fundamental Fairness and Due Process

 ¶34 We note that, given Mother's admission and her statements at the July 14 hearing, it is possible that the trial court simply misspoke and intended to state that it w as going to "make the adjudication," rather than "make the admission." In any event, the parties' subsequent conduct suggests that the Department, Mother, and the court proceeded with the understanding that the children had been adjudicated dependent or neglected as to Mother at the July 14 hearing. The parties approved a proposed adjudication and disposition order reflecting that adjudication had occurred on July 14, 2014 (although that proposed order w as not submitted to the court for signature until October 2015). The parties also proceeded with Mother's treatment plan, and the court presided over a series of review and permanency hearings during the following year. Mother never

raised any concerns regarding the absence of an adjudication order, and did not challenge the allegation in the Department's termination motion that the children had been adjudicated dependent or neglected as to her. Mother likewise did not object to the court's finding in the termination order that the children had been adjudicated dependent or neglected as to her. Indeed, Mother appeared to acknowledge in her initial briefing to the court of appeals that an adjudication order entered on July 14, 2014. Mother did not address this issue until the court of appeals requested supplemental briefing on it.

¶35 Under these circumstances, we conclude that the trial court's failure to enter a written adjudication order confirming the children's status prior to terminating the parent-child legal relationship did not impair the fundamental fairness of the proceedings or deprive Mother of due process.

### IV. Conclusion

¶36 For the foregoing reasons, the judgment of the court of appeals is reversed and the case is remanded for the court of appeals to consider Mother's remaining contentions on appeal.