The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 22, 2018

**2018COA45**

**No. 17CA0652, People in Interest of B.C. — Juvenile Court — Dependency and Neglect — Criteria for Termination**

A division of the court of appeals considers whether the district court erred by terminating parental rights without conducting a dispositional hearing or adopting a formal treatment plan that it found to be appropriate. The division concludes that, pursuant to section 19-3-604(1)(c)(I), C.R.S. 2017, the district court must find that "an appropriate treatment plan approved by the court has not been reasonably complied with" before deciding to terminate parental rights. Because the district court omitted the important step of finding a treatment plan to be appropriate, it could not terminate parental rights. Accordingly, the division reverses the termination order and remands the case for further proceedings.

The special concurrence further explains how the supreme court's decision in *People in Interest of J.W.*, 2017 CO 105, does not impact the division's opinion.

COLORADO COURT OF APPEALS     **2018COA45**

Court of Appeals No. 17CA0652
Pueblo County District Court No. 16JV42
Honorable Deborah R. Eyler, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of B.C., a Child,

and Concerning L.T.,

Respondent-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE RICHMAN
Taubman, J., concurs
Furman, J., specially concurs

Opinion Modified and
Petition for Rehearing DENIED

OPINION PREVIOUSLY ANNOUNCED AS "NOT PUBLISHED PURSUANT TO
C.A.R. 35(e)" ON December 21, 2017, IS NOW MODIFIED AND DESIGNATED
FOR PUBLICATION

Cynthia Mitchell, County Attorney, David A. Roth, Special Assistant County
Attorney, Pueblo, Colorado, for Petitioner-Appellee

Anna N. H. Ulrich, Guardian Ad Litem

Law Office of Roy Wallis, Roy Wallis, Mesa, Arizona, for Respondent-Appellant

¶ 1      L.T. (mother) appeals the judgment terminating the parent-child legal relationship with her child, B.C.

¶ 2      Mother contends that the trial court erred by not conducting a dispositional hearing or adopting a formal treatment plan that was found to be appropriate. The Pueblo County Department of Social Services (the Department) responds that the court substantially complied with the procedural requirements of sections 19-3-507 and -508(1)(d)(II), C.R.S. 2017. The Department also argues that mother waived her objections by not raising them in the trial court, and that she was not prejudiced by any failure to hold a dispositional hearing. Because we agree with mother, we reverse the judgment and remand for further proceedings.

## I. Background

¶ 3      The proceedings in this case began when the child and mother tested positive for methamphetamine after the child was born.

¶ 4      The Department filed a petition in dependency and neglect, alleging that there were concerns that mother had continued to use methamphetamine and was not bonding with the child.

¶ 5      After a Family Voice Conference, mother stipulated to an adjudication, admitting that the child's environment was injurious

1

to his welfare. She also stipulated to a preliminary treatment plan that required her to (1) sign releases of information; (2) participate in sobriety monitoring; (3) complete substance abuse and mental health evaluations and follow recommended treatment; (4) attend parenting classes and the child's doctor appointments; and (5) attend visitation.

¶ 6     Although no dispositional hearing was held, on February 23, 2016, the Department filed a special report with the trial court containing an attached treatment plan that had the same requirements. The cover page indicates that the Department sent mother's counsel a copy of the formal treatment plan.

¶ 7     By order dated February 29, 2016, based on mother's stipulation, the trial court adjudicated the child dependent and neglected. The court also ordered the Department to "submit a formal treatment plan to the Court within twenty (20) days from the date of the family voice conference." The order specified that "if no objections are made to said formal treatment plan, the formal treatment plan shall be adopted and made an order of the Court." The order did not include a finding that the treatment plan was "appropriate."

2

¶ 8     Mother did not object to the preliminary treatment plan from the Family Voice Conference or the formal treatment plan.

¶ 9     At two subsequent hearings, the trial court entered orders that stated that, as relevant here, the "Treatment Plan previously approved by the Court shall remain in full force and effect."

¶ 10    The Department later moved to terminate mother's parental rights.  Mother objected to the termination of her parental rights and asserted that she was in compliance with "the treatment plan." She did not specify which treatment plan.

¶ 11    Approximately one year after the petition was filed, following a contested hearing, the trial court entered judgment terminating mother's parental rights.

¶ 12    As pertinent here, the court stated that by its order of February 29, 2016, it had found the treatment plan dated February 23, 2016, "to be appropriate and in the best interests of the child." The court found that mother had not complied with the treatment plan, and the plan had not been successful.  The court then entered judgment terminating mother's parental rights.

## II. Analysis

¶ 13   Section 19-3-508(1) requires the court to "approve an appropriate treatment plan."  Section 19-3-604(1)(c)(I), C.R.S. 2017, requires a finding that "an appropriate treatment plan approved by the court has not been reasonably complied with" before deciding to terminate parental rights.

¶ 14   In this case, not only was there no dispositional hearing, but the trial court did not approve an "appropriate treatment plan."  In its termination judgment, the court stated that by orders of February 29, 2016, and March 30, 2016, it "found the treatment plans . . . to be appropriate."  However, these orders do not contain findings of "appropriateness."  Rather, they say the Department must submit a formal treatment plan, and if no objections are made, the plan would be adopted.  These orders did not conclude that the plans were appropriate, nor did they set forth the criteria by which plans are deemed to be appropriate.

¶ 15   Two divisions of the court have held that a parent's right to object to the elements of a treatment plan is waived if not raised before the termination hearing.  *See People in Interest of D.P.*, 160 P.3d 351, 354 (Colo. App. 2007); *People in Interest of M.S.*, 129 P.3d

4

1086, 1087 (Colo. App. 2005). Another division has held that objections to a treatment plan may be raised on appeal even if not objected to at the termination hearing. *See People in Interest of S.N-V.*, 300 P.3d 911, 914-18 (Colo. App. 2011).

¶ 16 This difference need not be resolved here. It is correct that mother did not specify objections to components of the treatment plan. But the issues raised on appeal are that the plan was adopted without a dispositional hearing, and that the trial court did not make a finding that the plan was appropriate. Although we recognize that the court here may have been attempting to expedite this proceeding, these formal steps may not be ignored.

¶ 17 Section 19-3-507(1)(a) specifies that at a dispositional hearing the court shall hear evidence on "the question of the proper disposition best serving the interests of the child and the public." Subsection (1)(b) requires a caseworker to submit details of services offered or provided to the family to facilitate reunification of the child and family. These steps are important in their own right, and subsection (2) adds that if based on this evidence the court has reason to believe a child may have an intellectual or developmental disability, specific referrals are required.

¶ 18    Section 19-3-508 provides for the different dispositions that the court may reach, timing guidelines for the termination hearing depending on the disposition, and provisions for placement of the child.

¶ 19    An appropriate treatment plan has been defined as one that is "reasonably calculated to render the particular [parent] fit to provide adequate parenting to the child within a reasonable time and that relates to the child's needs." § 19-1-103(10), C.R.S. 2017.

¶ 20    Finally, section 19-3-604(1)(c) permits the court to terminate the parent-child relationship only if "an appropriate treatment plan approved by the court has not been reasonably complied with by the parent." The court cannot make such a finding if it has not first found the treatment plan to be appropriate.

¶ 21    Because of the omission of these important steps in the proceedings of this case, we reverse the termination order and remand the case for further proceedings.

¶ 22    The week before we issued our opinion in this case, the supreme court issued its opinion in *People in Interest of J.W.*, 2017 CO 105, ¶ 32 (holding that the juvenile court's failure to enter a

6

written adjudication order confirming the children's status before terminating the parent-child legal relationship did not divest the court of jurisdiction to terminate). In a petition for rehearing, the Pueblo County Department of Social Services (Department) contends that we should reconsider our opinion in light of the supreme court's *J.W.* decision. The Department reasons that not holding a dispositional hearing before termination is the equivalent of not entering a written dependency and neglect adjudication. We requested simultaneous briefing from the parties on the Department's petition. Having considered the briefs, we now deny the petition for rehearing. We conclude that the opinion in *People in Interest of J.W.* does not suggest a different result in this case because *J.W.* analyzed whether the court had jurisdiction to terminate parental rights, which was not at issue in this case.

JUDGE TAUBMAN concurs.

JUDGE FURMAN specially concurs.

JUDGE FURMAN, specially concurring.

¶ 23     I write separately to address why I would not grant the Department's petition for rehearing.

¶ 24     Because a termination of parental rights case involves constitutional and statutory requirements, I address two fundamental questions: (1) What is the constitutional standard of proof in proceedings involving termination of a parent-child relationship?  (2) Does *People in Interest of J.W.*, 2017 CO 105 apply to our opinion?  I answer the first question by discussing our supreme court's opinion in *People in Interest of A.M.D.*, 648 P.2d 625 (Colo. 1982).  I then answer the second question by discussing the supreme court's opinion in *J.W.*

I. Constitutional Standard of Proof

¶ 25     In *A.M.D.*, our supreme court explained constitutional due process requirements for a juvenile court to terminate parental rights.  First, the court recognized the following:

> The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State.  Even when blood relationships are strained, parents retain a vital interest in

8

> preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.

*A.M.D.*, 648 P.2d at 632 (quoting *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982)).

¶ 26 Second, the court determined that, "in Colorado, a dependency or neglect proceeding and the resulting adjudication provide the jurisdictional bases for State intervention to assist the parents and child in establishing a relationship and home environment that will preserve the family unit." *A.M.D.*, 648 P.2d at 640.

¶ 27 Third, the court determined that "clear and convincing evidence is the appropriate constitutional standard of proof in proceedings involving termination of a parent-child relationship." *Id.* at 631. But, the court explained that only

> when conditions have so deteriorated that a child is abandoned . . . or a parent is deemed unfit when tested by demanding standards . . . is a parent-child relationship to be terminated. Termination is an unfortunate but necessary remedy when all reasonable means of establishing a satisfactory parent-child

9

> relationship have been tried and found
> wanting.

*Id.* at 640 (citations omitted).

¶ 28    Thus, here, before seeking to terminate parental rights, the Department must have intervened into the lives of mother and her child and used all reasonable means of establishing a satisfactory parent-child relationship.  Using all reasonable means of establishing a satisfactory relationship could only have been accomplished by developing an appropriate treatment plan approved by the court at a dispositional hearing.  *See* § 19-3-507(1)(a), C.R.S. 2017; *see also* § 19-1-103(10), C.R.S. 2017 (defining an appropriate treatment plan as one that is "reasonably calculated to render the particular [parent] fit to provide adequate parenting to the child within a reasonable time and that relates to the child's needs").  Because the court did not approve an appropriate treatment plan at a dispositional hearing, the Department did not use all reasonable means of establishing a satisfactory parent-child relationship.  We, therefore, reversed the judgment terminating parental rights and remanded the case with

directions for the court to hold a dispositional hearing because the constitutional and statutory standards of proof had not been met.

## II. Application of *J.W.*

¶ 29    In my opinion, *J.W.* does not apply to the present case because *J.W.* analyzed whether the court had jurisdiction to terminate parental rights, which was not at issue in this case.

¶ 30    *J.W.* first held that the failure of the juvenile court to reduce a dependency and neglect adjudication to writing did not divest the juvenile court of subject matter jurisdiction to later terminate mother's parental rights.  *Id.* at ¶ 4.  But, no one here disputed the subject matter jurisdiction of the juvenile court to hold a termination of parental rights hearing.

¶ 31    *J.W.* also held that respondents in dependency and neglect cases may consent by their words and conduct to the personal jurisdiction of the juvenile court.  *Id.* at ¶ 25.  But, no one here disputed the personal jurisdiction of the juvenile court to supervise the Department's intervention into the lives of mother and her children to establish a satisfactory parent-child relationship.

¶ 32    The question in this case is not whether mother consented to the personal jurisdiction of the juvenile court, or whether the

11

juvenile court had jurisdiction to terminate her parental rights. Rather, the question is whether the constitutional and statutory standards of proof were satisfied. *J.W.* does not help us answer that question.

¶ 33    Because the juvenile court did not approve an "appropriate treatment plan" at a dispositional hearing, the court lacked the prerequisites to find that mother was unfit. *See People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011) ("For a parent's 'treatment plan' to be 'appropriate,' it must be 'approved by the court' and be 'reasonably calculated to render the particular respondent fit to provide adequate parenting to the child within a reasonable time and . . . relate[ ] to the child's needs.'" (quoting § 19-1-103(10), C.R.S. 2011)). I, therefore, concur with the majority and vote to deny the petition for rehearing.