25CA0661 Peo in Interest of NB-P 09-04-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0661
Adams County District Court No. 23JV30191
Honorable Emily Lieberman, Judge

The People of the State of Colorado,

Appellee,

In the Interest of N.B-P., Jr., a Child,

and Concerning N.B-P., Sr.,

Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE TAUBMAN*
Pawar and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 4, 2025

Heidi Miller, County Attorney, Conor Hagerty, Assistant County Attorney, Westminster, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     In this dependency and neglect proceeding, N.B-P., Sr. (father)

appeals the juvenile court's order revoking his deferred adjudication

and adjudicating N.B-P., Jr. (the child) dependent and neglected.

We affirm the judgment.

## I.     Background

¶ 2     The Adams County Department of Human Services filed a

petition in dependency and neglect based on the parents' substance

use and the child being born substance exposed.

¶ 3     Father admitted that the child was homeless, without proper

care, or not domiciled with his parent, guardian, or legal custodian

through no fault of father.  The parties agreed to defer the

adjudication for at least six months conditioned on father's

compliance with an appropriate treatment plan adopted by the

juvenile court.

¶ 4     The treatment plan required father, among other things, to

(1) maintain ongoing and consistent communication with the

Department, specifically, "when not incarcerated"; (2) participate in

family time; (3) maintain a substance-free lifestyle; (4) address his

criminal cases; and (5) enhance his overall parental capability and

1

understanding of the child's developmental, medical, and basic needs.

¶ 5       After six months, the court extended the deferred adjudication for an additional six months.  The Department then moved to adjudicate based on "the child's young age and the lack of progress by parents in addressing child protection concerns that led to this case being opened."

¶ 6       The juvenile court held an evidentiary hearing over two days one month apart and adjudicated the child dependent and neglected.

## II.     Treatment Plan Compliance

¶ 7       Father contends that the juvenile court erred by entering an order of adjudication because the Department failed to prove that he did not comply with his treatment plan.  We disagree.

### A.     Applicable Law and Standard of Review

¶ 8       In dependency and neglect proceedings, an adjudication represents the juvenile court's determination that state intervention is necessary to protect a child and that the family requires rehabilitative services to safely care for the child.  *People in Interest of J.G.*, 2016 CO 39, ¶ 16, 370 P.3d 1151, 1157.  Typically, before

adjudicating a child dependent or neglected, the court must hold a hearing at which the department is required to prove the allegations in the petition by a preponderance of the evidence. *Id.*; *see also* § 19-3-505, C.R.S. 2025. Alternatively, the court may accept a parent's admission at an adjudicatory hearing. *People in Interest of J.W. v. C.O.*, 2017 CO 105, ¶ 32, 406 P.3d 853, 860. "The court's acceptance of [a parent's] admission establishe[s] the status of the child[] as dependent or neglected." *Id.*

¶ 9     When a parent admits that a child is dependent or neglected, the juvenile court may defer adjudication by continuing the adjudicatory hearing. § 19-3-505(5). Specifically, when a parent admits the child is dependent or neglected, a deferred adjudication allows the court, with all parties' consent, to continue the adjudicatory hearing for six months and to defer entry of judgment. § 19-3-505(5)(a)-(b). Following the initial six-month period, the

3

court may continue the hearing for another six months, after which the court must dismiss or sustain the petition.[1] § 19-3-505(5)(b).

¶ 10 In determining whether to extend a deferred adjudication, the juvenile court may consider the parent's admission made when the deferral was entered, along with any evidence related to the progress the parent has made and the ongoing needs and status of the child. *See People in Interest of N.G.*, 2012 COA 131, ¶¶ 23, 26-27, 303 P.3d 1207, 1213-14.

¶ 11 Whether a child is dependent or neglected presents a mixed question of fact and law because it requires the application of the statutory criteria to evidentiary facts. *See People in Interest of E.R.*, 2018 COA 58, ¶ 5, 463 P.3d 872, 874. We review the court's factual findings for clear error but review de novo its legal conclusions based on those facts. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8, 527 P.3d 404, 407.

---

[1] We acknowledge that the revocation hearing was held outside of the twelve-month timeframe permitted by section 19-3-505(5)(b), C.R.S. 2025. However, a juvenile court does not lose jurisdiction by not conducting the hearing within this statutory timeframe. *See People in Interest of A.W.*, 74 P.3d 497, 498-99 (Colo. App. 2003). Because father does not raise the juvenile court's noncompliance with the statutory timeframe as an issue on appeal, we will not address the issue further.

B.     Analysis

¶ 12     Father argues that "unrefuted" testimony established that he was in communication with the caseworker "for the majority of the case" and that the Department therefore failed to support the allegations in the amended petition that father had been difficult to reach.  However, the juvenile court found that father had been "difficult to reach throughout the [deferral] period" except during times he was incarcerated on pending criminal matters.

¶ 13     The record supports the court's finding.  The caseworker testified that the Department could not locate father at the outset of the case, and that communicating with him when he was not incarcerated was a significant struggle "throughout the duration of the case."  Early in the case, father was incarcerated at the Garfield County Jail for approximately six months.  The caseworker testified that after father's release, his whereabouts were unknown for approximately seven months, and she could not locate him until "a few weeks" before the first day of the adjudicatory hearing.  Father testified that after his release from jail, he "started to fall off . . .[,] started using again[,]" and "drifted and lost contact."  The

5

caseworker testified that she "had no idea where [father] was" and "had no way to reach him or find him."

¶ 14 Father argues that he "engaged in an extensive substance abuse treatment program" and achieved sobriety, and thus he was able to provide proper care for the child. The juvenile court acknowledged that father engaged in services for six months while incarcerated, but this "was not enough for him to maintain his sobriety" and, "without treatment, [he] quickly returned to use." The court found that father had "long-standing substance use issues that have not yet been addressed through treatment."

¶ 15 The record supports the court's finding. The caseworker testified that she still had substantial safety concerns for the child because she had not received "verification of any kind of substance abuse treatment" or "demonstrated sobriety" from either parent. While father was incarcerated in Garfield County, he engaged in services to address addiction, mental health, parenting, and life skills. Nevertheless, father admitted that he "started using again" shortly after his release from jail seven months before the first day of the adjudicatory hearing. When the adjudicatory hearing began, father had been in inpatient treatment for only five days, was still in

the facility's orientation phase, and had not yet received a treatment plan. Thus, although the Department presented no evidence that father was under the influence of substances at a particular family gathering, as alleged in the amended petition, the evidence established that father's longstanding substance use issues had not yet been adequately addressed through treatment.

¶ 16 To the extent father challenges the juvenile court's finding that the child lacked proper parental care, the record supports the court's finding. Father testified that it would be impossible for the child to be placed with him. The caseworker testified that father was still in his initial thirty-day blackout period at inpatient treatment and accordingly would not be allowed to have visits with the child during this period. Further, the caseworker testified that father had not engaged in any family time since his release from jail eight months earlier, and that father and the child needed to re-establish a relationship. The caseworker opined that if the court dismissed the petition, the child would not have a home in which to live with father.

¶ 17 Because the record supports the juvenile court's findings that father failed to comply with his treatment plan and that the child

would lack proper parental care if returned to father, we conclude that the court did not err by revoking father's deferred adjudication and adjudicating the child dependent and neglected. *See In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15, 280 P.3d 78, 81 (when there is record support for the court's findings, its resolution of conflicting evidence is binding on review).

### III.    Disposition

The judgment is affirmed.

JUDGE PAWAR and JUDDGE LUM concur.