25CA1703 Peo in Interest of IB 02-26-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1703
Adams County District Court No. 23JV30095
Honorable Kelley R. Southerland, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of I.B., a Child,

and Concerning J.A.G.,

Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE HAWTHORNE*
Tow and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 26, 2026

---

Heidi Miller, County Attorney, Deborah Kershner, Assistant County Attorney, Westminster, Colorado, for Appellee

Jenna L. Mazzucca, Counsel for Youth, Salida, Colorado, for I.B.

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     J.A.G. (mother) appeals the juvenile court's judgment revoking her deferred adjudication and adjudicating I.B. (the youth) dependent and neglected.  We affirm.

## I.     Background

¶ 2     The Adams County Human Services Department (the Department) received multiple referrals concerning mother's substance use.  The Department contacted mother, who agreed to let the youth stay with kin while mother began treatment.  When the Department learned that mother had changed her mind and was attempting to bring the youth back home, it sought, and the juvenile court granted, temporary custody of the youth for placement with kin.  The Department then filed a petition in dependency and neglect.

¶ 3     Five months later, mother and the Department agreed to a deferred adjudication.  As part of the agreement, mother admitted that the youth was homeless, without proper care, or not domiciled with the youth's parent, guardian, or legal custodian through no fault of mother.  *See* § 19-3-102(1)(e), C.R.S. 2025.

¶ 4     Mother agreed to comply with a treatment plan that required her to (1) participate in mental health and substance abuse

1

treatment; (2) submit to random urinalysis testing; (3) attend family time; (4) maintain contact with the caseworker; and (5) notify the caseworker of any criminal charges or changes in contact information.

¶ 5 Eleven months later, the Department filed a motion to adjudicate the youth dependent and neglected, arguing that mother had not fully resolved the protective concerns that precipitated the filing of the petition. Following a contested hearing, the juvenile court adjudicated the youth dependent and neglected.

## II. Treatment Plan Compliance

¶ 6 Mother contends that the juvenile court erred by entering an adjudication order because she had complied with her treatment plan. We are not persuaded.

### A. Applicable Law and Standard of Review

¶ 7 "The purpose of an adjudicatory hearing is to determine whether the factual allegations in the dependency and neglect petition are supported by a preponderance of the evidence, and whether the status of the subject [youth] . . . warrants intrusive protective or corrective state intervention into the familial relationship." *People in Interest of A.M.*, 786 P.2d 476, 479 (Colo.

App. 1989). Alternatively, the juvenile court may accept a parent's admission at an adjudicatory hearing. *People in Interest of J.W. v. C.O.*, 2017 CO 105, ¶ 32. "The court's acceptance of [a parent's] admission establishe[s] the status of the [youth] as dependent or neglected . . . ." *Id.*

¶ 8 Section 19-3-505(5), C.R.S. 2025, provides for a process often referred to as "deferred adjudication." Specifically, it allows a juvenile court, with the consent of all parties, to continue the adjudicatory hearing for up to six months and to defer entry of judgment when a parent admits that the subject child (or youth) is dependent or neglected. § 19-3-505(5)(a)-(b). Following the initial six-month period, the juvenile court may continue the hearing for another six months, after which the court must dismiss or sustain the petition. § 19-3-505(5)(b).

¶ 9 A division of this court has concluded that the continuation of an adjudicatory hearing under section 19-3-505(5) "contemplates reconsidering the [youth's] status before entering the adjudicatory order." *People in Interest of N.G.*, 2012 COA 131, ¶ 23. So when a motion to revoke a deferred adjudication is filed, the juvenile court "should address both the ongoing probative value of any parental

3

admission and the parent's new evidence in findings either adjudicating the [youth] dependent and neglected as to the parent or ordering the petition dismissed and the [youth] returned to parental custody." *Id.* at ¶ 27.

¶ 10 Whether a youth is dependent or neglected presents a mixed factual and legal question because it requires applying statutory criteria to evidentiary facts. *See People in Interest of E.R.*, 2018 COA 58, ¶ 5. We review the court's factual findings for clear error but review de novo its legal conclusions based on those facts. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. In determining whether the evidence is sufficient to sustain an adjudication, we review the record in the light most favorable to the prevailing party and draw every inference fairly deducible from the evidence in favor of the juvenile court's decision. *People in Interest of D.M.F.D.*, 2021 COA 95, ¶ 13.

## B. Analysis

¶ 11 The juvenile court found that "protective concerns remain[ed] concerning [the youth's] emotional needs in her relationship" with mother because of the youth's experiences in mother's care before mother's sobriety. Specifically, the court found that mother was

"disconnected" from the youth's emotional reality and unable to meet the youth's emotional needs. The court concluded that the youth would lack proper care if she were to return to mother's home.

¶ 12　　The record supports the court's findings. The youth, whom the juvenile court found to be credible, expressed feeling mentally and emotionally "unstable" about potentially returning to mother's care. She described mother's lengthy struggle with substance abuse, mother's frequent relapses, and her own resulting feelings of insecurity and instability throughout her childhood. Following a family time visit where mother "cornered" the youth and pressured her to "let the court know that she wanted to go back home," mother and the youth did not have contact for "quite some time." While they resumed contact approximately three months before the hearing — which the youth described as going "pretty good" — the youth expressed feeling unheard and emotionally unsupported by mother. Ultimately, the youth explained that she was "[k]ind of" scared of mother because the youth did not feel that she could trust her.

¶ 13    The caseworker testified that the youth struggled with trusting mother and feeling emotionally safe in her care. The caseworker believed that family therapy for mother and the youth would be "critical" to stabilize their relationship. But family therapy had not yet begun because the youth had only recently expressed her willingness to attend it. The caseworker opined there was "great risk" that the youth would struggle with her mental health and feeling safe if she returned to mother's care.

¶ 14    Mother asserts that considering the uncontested evidence that she had complied with her treatment plan, including her sobriety, stability, and ability to care for the younger siblings, the juvenile court erred by revoking her deferred adjudication. True, the caseworker acknowledged mother's compliance, but partial, or even substantial, compliance may not be sufficient to correct a parent's conduct or condition. *People in Interest of G.R.N.M.*, 228 P.3d 976, 978 (Colo. App. 2010).

¶ 15    The juvenile court considered mother's overall treatment plan compliance. But it also found that based on the youth's past experiences with mother's substance abuse, which impacted her "emotional and physical readiness to return to [mother's] care," she

6

was differently situated than her younger siblings. Considering the youth's current status, the court determined that she would lack proper care in mother's home because of mother's inability to meet her emotional needs. *See N.G.*, ¶ 23 (directing that before entering an adjudicatory order at the end of a deferral period, the court should consider the youth's "current status"); *see also People in Interest of S.B.*, 742 P.2d 935, 939 (Colo. App. 1987) ("An action in dependency or neglect is designed to determine whether the [youth], for whatever reason, lacks the benefit of parental guidance, concern, protection, or support."). It is not our role to reweigh the evidence or substitute our judgment for the juvenile court's. *People in Interest of K.L.W.*, 2021 COA 56, ¶ 62.

¶ 16    Finally, to the extent mother argues that the juvenile court erred by not affording her the "*Troxel* presumption of fitness," we reject that argument. *See Troxel v. Granville*, 530 U.S. 57, 68 (2000) ("[T]here is a presumption that fit parents act in the best interests of their children."). The supreme court has held that "*Troxel* does not require . . . any . . . addition to the statutory criteria for the [adjudication] statute to pass constitutional muster." *People in Interest of J.G.*, 2016 CO 39, ¶ 23. Mother does not assert

that the juvenile court failed to properly apply the statutory criteria. Nor do we discern any such error.

¶ 17 On reviewing the record in the light most favorable to the Department, we discern no error in the juvenile court's order revoking mother's deferred adjudication and adjudicating the youth dependent and neglected. *D.M.F.D.*, ¶ 13.

## III. Disposition

¶ 18 The judgment is affirmed.

JUDGE TOW and JUDGE LIPINSKY concur.